Argued and submitted March 4, decision of Court of Appeals reversed and case
remanded to that court for further proceedings August 14, 2008
See 226 Or App 78, 202 P3d 919 (2009)

## STATE OF OREGON,
*Petitioner on Review,*

*v.*

## ROBERT ARTHUR MILLER,
*Respondent on Review.*

## (CC 02CR0420; CA A121431; SC S054940)

191 P3d 651

Robert M. Atkinson, Assistant Attorney General, Salem, argued the cause for petitioner on review. With him on the briefs were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Erin K. Galli, Chilton, Ebbett & Galli, LLC, Portland, argued the cause and filed the brief for respondent on review.

Before De Muniz, Chief Justice, and Gillette, Durham, Balmer, Kistler, and Walters, Justices.**

DE MUNIZ, C. J.

---

** Linder, J., did not participate in the consideration or decision of this case.

## DE MUNIZ, C. J.

The state seeks review of a Court of Appeals decision reversing defendant's convictions for drug manufacturing. The Court of Appeals reversed defendant's convictions reasoning, in part, that (1) on appeal, the state had conceded that defendant was placed under arrest when first restrained; and (2) at a pretrial hearing, the deputy sheriff who arrested defendant had testified that he lacked probable cause for the arrest. *State v. Miller*, 211 Or App 667, 156 P3d 125 (2007). For the reasons that follow, we now reverse the Court of Appeals decision and remand this case to that court for further proceedings.

We take the facts from the record and the Court of Appeals opinion. In June 2002, a Josephine County Deputy Sheriff was dispatched to investigate a single vehicle accident in which a pickup truck had reportedly rolled over on a highway. En route, the deputy came across defendant walking alone along the road about a half mile from the reported crash site. The deputy observed that the description he had received of the pickup's driver matched that of defendant and that defendant had debris in his hair and on his clothing, as well as a number of fresh cuts and scrapes on his arms. The deputy stopped and spoke with defendant. When asked if he had been involved in an accident, defendant replied, "That's not my truck. I wasn't driving." Despite that denial, the deputy nevertheless held defendant until a second officer arrived at their location. The deputy then handcuffed defendant, placed him in the second patrol car, and both patrol vehicles proceeded to the crash site.

Arriving at the crash site, the deputy observed a pickup truck turned upside down on the roadway and the remains of a methamphetamine laboratory and precursor chemicals strewn around the vehicle and inside the cab of the truck. Shortly after that discovery, a third officer at the scene positively identified defendant as having been the pickup's driver shortly before the crash. Defendant was then informed that he was under arrest for "failure to leave his name at the scene of an accident,"[1] and manufacture of a controlled substance; the deputy then advised defendant of his *Miranda* rights.

---

[1] The offense—more properly known as the failure to perform the duties of a driver—is a Class A misdemeanor. ORS 811.700(1)(c) provides:

Defendant subsequently was charged on a number of criminal counts relating to the illegal manufacture of controlled substances. Before trial, he moved to suppress all the evidence against him that had been seized at the crash site. Defendant argued that his actual arrest had not taken place at the crash site but had occurred earlier when the deputy initially handcuffed him and put him in the patrol car for transport back to the accident scene. Defendant contended that, at that point, the deputy had lacked probable cause to arrest him, thereby nullifying both his arrest and the seizure of any evidence thereafter.

At the suppression hearing that followed, the deputy testified to the events leading to his discovery of the illicit drug manufacturing materials, including taking defendant into custody after their roadside encounter and transporting him to the accident scene. On cross-examination, defense counsel and the deputy engaged in the following exchange concerning the deputy's initial basis for connecting defendant with the reported accident:

"[Defense Counsel]: And isn't it true that even the whole time you were—well, when you took [defendant] back to the [accident] scene, you really did not know whether he had been involved in that at all?

"[Deputy]: I had reasonable suspicion, but I had not yet reached sufficiently [sic] to call it probable cause."

The trial court denied defendant's motion to suppress, concluding that, at the time that defendant was first stopped and taken into custody, the deputy had possessed probable cause to arrest defendant for "failure to leave his name at the scene of an accident." Defendant subsequently

---

"A person commits the offense of failure to perform the duties of a driver when property is damaged if the person is the driver of any vehicle and the person does not perform duties required under any of the following:

"* * * * *

"(c) If the person is the driver of any vehicle involved in an accident resulting only in damage to fixtures or property legally upon or adjacent to a highway, the person shall do all of the following:

"(A) Take reasonable steps to notify the owner or person in charge of the property of such fact and of the driver's name and address and of the registration number of the vehicle the driver is driving.

"(B) Upon request and if available, exhibit any document issued as official evidence of a grant of driving privileges to the driver."

entered conditional pleas of no contest under ORS 135.335[2] to one count of possessing a precursor substance with intent to manufacture a controlled substance, ORS 475.967, and two counts of manufacturing a controlled substance, *former* ORS 475.992 (2001), *renumbered as* ORS 475.840 (2005). The trial court imposed consecutive sentences for defendant's crimes.

On defendant's appeal, the state did not dispute that defendant was arrested at the time that he was handcuffed, placed in the patrol car, and taken to the crash site. *Miller*, 211 Or App at 671. Viewing that concession together with the deputy's testimony at trial, the Court of Appeals framed the issue before it as

> "whether the officer's testimony that he did not have probable cause to arrest defendant is dispositive, or whether the trial court could properly rely on the surrounding circumstances to infer that the officer subjectively believed that defendant had committed a criminal offense in his presence."

*Id.* To resolve that question, the Court of Appeals relied on the following statement from this court's decision in *State v. Owens*, 302 Or 196, 204, 729 P2d 524 (1986):

> " 'The test is not simply what a reasonable officer *could have* believed when he conducted a warrantless search or seizure, but it is what this officer actually believed, based upon the underlying facts of which he was cognizant, together with his own training and experience. Neither is the test whether the officer articulates to the suspect the basis for a second ground for arrest. *What is required is that the officer formulate such a basis to himself at the time he acts.*' "

*Miller*, 211 Or App at 671-72, quoting *Owens*, 302 Or at 204 (first emphasis in original; second emphasis added by Court of Appeals).

---

[2] ORS 135.335(3) provides:

"With the consent of the court and the state, a defendant may enter a conditional plea of guilty or no contest reserving, in writing, the right, on appeal from the judgment, to a review of an adverse determination of any specified pretrial motion. A defendant who finally prevails on appeal may withdraw the plea."

Focusing on the deputy's testimony that he had lacked probable cause to arrest when he first restrained defendant, the Court of Appeals held that, under *Owens*, the deputy had arrested defendant before possessing the subjective belief of wrongdoing required to constitutionally do so. *Id.* at 672. That is, the Court of Appeals determined that, given the deputy's testimony, the trial court could not reasonably have inferred from the circumstances and actions following the deputy's initial contact with defendant that the deputy subjectively believed that he had probable cause. It would be improper to do so, the Court of Appeals opined, because,

> "generally, it is only when the record is silent as to what an officer actually believed at the time of the arrest that we resort to reasonable inferences based on the officer's conduct and surrounding circumstances to ascertain whether he formulated a probable cause belief at the time that he effected the arrest. * * * Here, there is nothing in the record to cast doubt on the intended meaning of the officer's testimony when he testified that he had not yet formulated a probable cause belief at the time of the arrest."

*Id.* at 672 (internal citations omitted). As a result, the Court of Appeals reversed defendant's convictions.[3] We allowed the state's petition for review to examine the Court of Appeals' analysis of the subjective probable cause requirement enunciated in *Owens* and its application to the facts of this case.

On review, the state contends that this court should revisit and overturn the probable cause analysis articulated in *Owens*. Specifically, the state argues that the identification in *Owens* of subjective belief as a component of probable cause represents an "unprecedented aspect" of Oregon search and seizure law. The state also argues that, for purposes of Article I, section 9, of the Oregon Constitution,[4] *Owens*

---

[3] Because it reversed defendant's convictions, the Court of Appeals did not address defendant's other assignment of error relating to the trial court's imposition of consecutive sentences.

[4] Article I, section 9, provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

appears to confer on criminal defendants the right to require law enforcement officers to subjectively reach, and articulate in court, the correct legal conclusions regarding the factual bases for the arrests they make. The existence of such a right, the state continues, is not supported by the text, history, or interpretive case law of Article I, section 9, and, as a result, has no place in Oregon's search and seizure jurisprudence.

We begin our examination of this case by first noting that the state's focus on *Owens* as the wellspring of the subjective component of the probable cause inquiry in Oregon is misplaced. Long before *Owens*, this court recognized that law enforcement officers' belief in the culpability of those they subjected to warrantless arrests was a key factor in determining the legality of those arrests.

One of the early applications of that principle is found in *State v. Lee*, 120 Or 643, 253 P 533 (1927). In *Lee*, after police officers had executed a search warrant for an illegal distillery on a small farm, they followed the odor of fermenting mash to a neighboring farm—that of the defendant—some distance away. Although the officers did not have a warrant to search the second farm, the odor of mash led them to the barn, where they discovered a 100-gallon still and 600 gallons of corn mash. The officers then arrested the defendant. In upholding the validity of that arrest, the court concluded:

> "It is not essential in making an arrest without a warrant that the officer must absolutely know that an offense is being committed. *He must believe it is being committed* and must so believe upon the evidence of his own senses."

*Id.* at 650 (emphasis added).

Although the defendant in *Lee* had argued that the search leading to his arrest had violated Article I, section 9, the court declined to consider that claim as a constitutional one. It reasoned that the defendant's barn—unused for any family or domestic purpose other than a distillery—was incapable of being viewed as a dwelling place and was therefore not entitled to the state constitutional protections that defendant had urged. *Id.* at 649-50.[5] Four years later, however,

---

[5] Of course, this court no longer adheres to *Lee*'s holding that Article I, section 9, applies to dwellings but not barns. *See State v. Smith*, 327 Or 366, 372, 963 P2d 642 (1998) (defining protected spaces for the purposes of Article I, section 9).

this court gave the belief requirement set out in *Lee* a constitutional dimension in the course of deciding another illegal liquor case, *State v. Duffy*, 135 Or 290, 301, 295 P 953 (1931).

In *Duffy*, police officers once again followed the odor of fermenting mash to the site of an illegal distilling operation, this time in a residential Portland neighborhood. Acting only on the limited information that a still was operating somewhere in the area, none of the officers possessed a warrant to search or arrest. Coming to the house that they determined was the source of the odor, the officers knocked, were let in by one of the inhabitants and, shortly thereafter, proceeded upstairs and arrested the defendant as he tended a 225-gallon still. Following an unsuccessful pretrial motion to suppress the evidence found at the home, the defendant and an accomplice were both convicted of operating an illegal still.

On appeal, the court concluded that the structure that housed the illegal still in *Duffy* was indeed a home and, therefore—for purposes of search and seizure law—subject to the protections of the Fourth Amendment to the United States Constitution and Article I, section 9, of the Oregon Constitution. Consequently, a threshold issue for the court was whether the arresting officers had "possessed enough evidence before they entered the house to constitute justification for their act." *Duffy*, 135 Or at 301. In concluding that the odor from the still had, for constitutional purposes, provided the required foundation for the arrests that followed, the court again relied on the belief component articulated in *Lee*. At the same time, however, it also recognized that some objective foundation was required to support that belief:

> "To justify an officer in making an arrest without a warrant, mere suspicion is insufficient; likewise a belief unsupported by facts or circumstances will not justify his action. In *State v. Lee*, supra, this court said:
>
>> " 'It is not essential in making an arrest without a warrant that the officer must absolutely know that an offense is being committed. He must believe it is being committed and must so believe upon the evidence of his own senses.'

> "The officer must have probable cause to believe in the guilt of the suspected party, and 'probable cause' has been defined as the existence of such circumstances which would lead a reasonably prudent man to believe in the guilt of the accused party."

*Id.*

Lee and *Duffy* demonstrate that this court wrestled with the concept of probable cause under the Oregon Constitution more than 50 years before deciding *Owens.* That fact, by itself, is unremarkable. However, those cases also demonstrate that, long before *Owens*, the court defined the mechanics of probable cause using the same components that *Owens* would set out again some 50 years later; *i.e.*, a subjective component coupled with an objective basis for concluding that there was probable cause to arrest. Consequently, although *Owens* did not expressly draw on *Lee* and *Duffy* in its discussion of probable cause, those prior decisions nevertheless make it difficult to view *Owens*—as the state would have us do now—as having announced a new paradigm for probable cause analysis. As we explain below, the court's use of the term "subjective belief" in *Owens* was not intended to establish a new, more rigorous probable cause standard for warrantless arrests but, instead, was intended to confirm that an officer's subjective state of mind remains an important part of the Oregon constitutional analysis.[6]

 That said, we nevertheless agree with the state that defendant has no right to suppression of the evidence against him. In *State v. Pollock*, 337 Or 618, 622-23, 102 P3d 684 (2004), this court summarized the particulars of probable cause to arrest with respect to both its statutory components and the constitutional components set out in *Owens*:

> "A warrantless arrest is appropriate if a police officer has probable cause to believe that a person has committed a felony. ORS 133.310(1)(a). Probable cause to arrest must be based on 'a substantial objective basis for believing that

---

[6] Probable cause and subjective belief of wrongdoing have also long been linked in other contexts. *See, e.g., Rose v. Whitlock*, 277 Or 791, 799, 562 P2d 188 (1977) ("[F]or one to have probable cause to initiate a criminal prosecution he must have both a reasonable belief and a subjective belief in the guilt of the accused[.]"); *Gustafson v. Payless Stores Northwest, Inc.*, 269 Or 354, 357, 525 P2d 118 (1974) (same).

more likely than not an offense has been committed and a person to be arrested has committed it.' ORS 131.005(11). From a constitutional perspective, two components comprise probable cause: '[a]n officer must subjectively believe that a crime has been committed and thus that a person or thing is subject to seizure, and this belief must be objectively reasonable in the circumstances.' *State v. Owens*, 302 Or 196, 204, 729 P2d 524 (1986)."

As *Pollock*'s quotation from *Owens* makes clear, the subjective component of the probable cause inquiry is satisfied if the officer believes that he or she has lawful authority to restrain the individual's liberty. The fact that the officer may be mistaken about the basis or the extent of the restraint is not fatal for the purposes of the subjective component, as long as objectively there is a constitutionally sufficient basis for the officer's actions.

■ Over the years, the court has analyzed different arrest scenarios to determine whether the requisite subjective belief was present for probable cause purposes. In the course of doing so, however, the court has never articulated any principle—constitutional or otherwise—requiring that the state establish the arresting officers' subjective belief in court through express declarations from such officers that they possessed probable cause to arrest at the time that they acted. Indeed, to do so would contravene decisions from this court that have minimized the utility of such testimony in determining the legality of a warrantless arrest.

For example, in *State v. Cloman*, 254 Or 1, 456 P2d 67 (1969), two police officers on patrol received a radio dispatch alerting them to the fact that three men in a Cadillac had recently been observed leaving a location where a large cache of stolen copper wire had just been discovered by other officers. The two officers later stopped the Cadillac and recognized the defendant-driver as having "a reputation as a copper wire thief." After arresting defendant on charges of violating an "after-hours" city ordinance, the officers searched the trunk of the Cadillac and discovered a quantity of stolen copper wire. At trial, the trial court concluded that the rationale given for the arrest was not enough to justify the seizure and search of the defendant and his vehicle.

Although this court agreed with that proposition, it nevertheless concluded that the officers' actions were legally justified because those actions had been supported by probable cause to arrest for a different crime:

> "The question arises whether it is material that the officers had probable cause to arrest defendant for the commission of a crime in connection with the stolen copper wire. The officers' expressed cause for arresting the defendant was a violation of an 'after hours' city ordinance. We believe it reasonable to conclude that the officers gave this cause for arrest because of their uncertainty of the law of probable cause for arrest. We also believe it reasonable to conclude that the actual cause for which the officers arrested [the defendant] was some charge concerning the stolen wire. Under these circumstances, we find nothing to be served by holding the arrest invalid because the officers were uncertain about a problem which puzzles the courts. *We hold that if the officers had probable cause to arrest, the arrest made is not rendered illegal because the officers expressed another and improper cause for arrest.*"

*Id.* at 12 (emphasis added).

■ Cloman established that an officer's expressed reason for making an arrest does not control a court's determination of that arrest's legality—so long as the officer *acted on the belief* that there was a legal justification for that action (the subjective component) and the officer's belief was objectively reasonable (the objective component). For the purposes of the subjective component of the probable cause inquiry, it is sufficient if the trial court finds (and there is evidence to support its findings) that the officer reasonably believed that he had lawful authority to act, even if the officer's subjective basis for acting turns out to be incorrect. Of course, in order to prove a valid arrest, the state also must establish, in addition to the officer's subjective belief that he or she had lawful authority to act, that the facts objectively are sufficient to establish probable cause.

■ In this case, we assume that the deputy placed defendant under arrest before transporting him to the crash site.[7]

---

[7] As we have already noted, the Court of Appeals concluded that, on appeal, the state had conceded defendant's arrest in the scenario noted above. Whether a police officer has made an arrest as opposed to a limited duration stop, however, is

We also conclude that, objectively, the deputy had probable cause to arrest defendant for failing to perform the duties of a driver. The only question then is whether the trial court erred in implicitly finding that the deputy believed he had lawful authority to restrain defendant to the extent he did. As noted, the Court of Appeals held that, given the deputy's statement that he lacked probable cause, the trial court could not have found that the deputy possessed the requisite subjective belief. We disagree with the Court of Appeals' analysis for two reasons.

First, under Oregon law, the purpose of presenting evidence at a trial or in a pretrial hearing—evidence such as the deputy's testimony in this case—is to adduce the truth concerning questions of fact. ORS 41.010 provides:

> "Judicial evidence is the means, sanctioned by law, of ascertaining in a judicial proceeding the truth respecting a question of fact. Proof is the effect of evidence, the establishment of the fact by evidence."

Whether probable cause has properly preceded an arrest, however, is not a question of fact; it is a question of law. *See State v. Snow*, 337 Or 219, 223 n 2, 94 P3d 872 (2004) (stating that whether facts establish probable cause is a question of law). Deciding questions of law is the province of the court, not the witnesses who come before it:

> "All questions of law, including the admissibility of testimony, the facts preliminary to such admission and the construction of statutes and other writings and other rules of evidence shall be decided by the court."

ORS 136.310. Because the presence or absence of probable cause is a question of law, the deputy's testimony at trial—"I had reasonable suspicion, but I had not yet reached sufficiently [*sic*] to call it probable cause"—reflects, at best, the deputy's opinion on a complex legal issue, not a statement of

---

a question of law, and a "concession" to such a question means only that the party agrees with (and chooses not to contest) a particular legal conclusion. Consequently, this court is not obliged to accept such concessions at face value. *See State v. Bea*, 318 Or 220, 224, 864 P2d 854 (1993) (holding that court need not accept state's concession concerning legal conclusion that stop had been unlawful). In any event, resolution of that question has no impact on the proper disposition of this case.

fact. It did not require the trial court to conclude that the deputy subjectively believed that he lacked legal authority to restrain defendant's liberty to the extent that he did.

Second, to the extent that the Court of Appeals understood *Owens* to require a conclusion that the deputy's arrest of defendant was unlawful because the deputy had testified that he possessed reasonable suspicion, but not probable cause, the Court of Appeals erred. With regard to warrantless arrests, our case law has consistently demonstrated that the probable cause formulation in *Owens* was not intended to make an officer's in-court assessment of his or her degree of suspicion dispositive of the broader question, *viz.*, was the arrest justified by probable cause? A court must make that objective determination after considering all the circumstances relevant to the arrest. The subjective belief component of *Owens*'s probable cause calculus was intended only to restate principles regarding warrantless arrests that have deep roots in the Oregon cases: law enforcement officers must reasonably believe that their conduct is legally justified, and they must have acted on that belief in restraining a defendant's liberty.

■ In this case, the deputy who initially stopped defendant knew that: (1) a serious single vehicle accident recently had occurred on a public highway; (2) the suspect—whom he had stopped on foot—not only matched the description of the vehicle's driver, but also bore physical indicators of having been in an accident; and (3) the suspect independently knew what kind of vehicle had been involved in the accident, but disavowed any connection with the crashed vehicle or the accident in which it been involved. Given those facts, (1) the trial court could find the deputy was aware of facts that were sufficient to establish probable cause to believe that defendant had committed the misdemeanor of failing to perform the duties of a driver, ORS 811.700, and (2) the deputy's conduct permitted the trial court to infer that the deputy had acted in response to those facts. *See* ORS 133.310(1) (when probable cause to do so exists, peace officers may arrest a person for committing a misdemeanor). Even if the deputy believed that, legally, those facts only created a reasonable suspicion sufficient to stop defendant and that he was doing nothing more than that, the deputy reasonably believed that

he had the lawful authority to do so. That is enough to establish the subjective component of the inquiry. Because the facts also were sufficient objectively to establish probable cause, the deputy's actions did not violate defendant's statutory or constitutional rights.

As already noted, because the Court of Appeals reversed defendant's convictions, it did not address his other assignment of error regarding the imposition of consecutive sentences in his case. The Court of Appeals must now take up that issue on remand.

The decision of the Court of Appeals is reversed and the case is remanded to that court for further proceedings.