Submitted May 28, affirmed September 24, 2008

# STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

# TYRONE TRAVIS JOHNSTON,
*Defendant-Appellant.*

Multnomah County Circuit Court
050834851; A131864

193 P3d 1010

Peter Gartlan, Chief Defender, Legal Services Division, and Meredith Allen, Deputy Public Defender, Office of Public Defense Services, filed the opening brief for appellant. On the supplemental brief was Meredith Allen, Deputy Public Defender.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Jamie K. Contreras, Assistant Attorney General, filed the brief for respondent.

Before Landau, Presiding Judge, and Schuman, Judge, and Deits, Judge pro tempore.

LANDAU, P. J.

## LANDAU, P. J.

Defendant appeals a judgment of conviction for possession of a Schedule I controlled substance and possession of a Schedule II controlled substance. He assigns error to the trial court's denial of his motion to suppress the evidence obtained after what he contends was an unlawful arrest. He also raises an unpreserved claim of error regarding the trial court's admission of a crime laboratory report without requiring the state to produce the author of the report, which defendant urges us to address as plain error. We do not agree with defendant that the trial court plainly erred with regard to admitting the report. With regard to defendant's motion to suppress, we conclude that the trial court did not err in denying that motion. Accordingly, we affirm.

The relevant facts are undisputed. Someone reported a disturbance outside of a courtroom on the seventh floor of the Multnomah County Courthouse, which was being used for "drug call" on that day. Deputies Griffith and Hardy were the first to respond. They are "desk deputies" who have authority to detain people in the courthouse but not authority to make arrests. When they arrived on the seventh floor, they found defendant attempting to climb the walls. Defendant was there for a court appearance unrelated to the charges in this case. Others who were waiting outside of the courtroom were trying to stay away from defendant. Defendant exhibited signs of being under the influence of some sort of intoxicant.

Griffith told defendant to grab the wall. When Griffith began to pat down defendant to search for weapons, defendant pulled away. Griffith and Hardy forced defendant against the wall. Captain Bishop, who had just arrived, held a taser to defendant's back and told him, "Don't resist." The officers completed the patdown and felt no hard object that might be a weapon.

Griffith then handcuffed defendant's hands behind his back. After defendant was handcuffed, two more officers, Sergeant Prigge and Deputy Gates, arrived. Gates is a law enforcement officer with authority to arrest. She noticed that defendant was obviously under the influence of an intoxicant

and that he was behaving erratically. Based on the crowd nearby and what she had heard about defendant trying to climb walls, Gates believed that she had probable cause to arrest defendant for disorderly conduct, although she did not formally arrest him at that time. Griffith and Hardy each had defendant by an arm, because defendant required assistance. All of the officers escorted defendant to the holding cell area on the first floor of the courthouse.

Before placing defendant in the holding cell, the officers inventoried his personal belongings pursuant to the local inventory policy. While still holding defendant's arms, Griffith and Hardy removed all items from defendant's clothing. Hardy found an unlabeled opaque plastic pill bottle. When Griffith picked it up, it felt light, although it felt like something was in it. When he shook it, it made no rattling noise. Griffith opened the bottle and saw what appeared to be illegal substances. Gates then read defendant his *Miranda* warnings and arrested defendant for possession of a controlled substance. Defendant was still handcuffed.

Defendant moved to suppress the pill bottle and its contents, arguing that they were the result of an unlawful search. Specifically, defendant argued that he had unlawfully been placed under arrest at the moment that Griffith placed him in handcuffs and took him to a holding area, where the actual search occurred.

At the suppression hearing, Griffith testified that, when he handcuffed defendant, he did *not* have probable cause to arrest him for any offense. According to Griffith, he placed defendant in handcuffs "for his safety and ours" and took defendant downstairs to a holding cell "[b]ecause of his erratic behavior" and "because he was causing such a commotion" in order to "[t]alk to [defendant]" and "get him away from everybody that was up there." Gates testified that, when they discovered the pill bottle during the inventory, and based on defendant's apparent intoxication and her own experience that unlabeled pill bottles usually contain illegal substances, she had probable cause to arrest defendant for possession of a controlled substance.

The trial court denied defendant's motion to suppress. The court did not find that defendant had been lawfully handcuffed as a reasonable safety measure. Instead, the court concluded that, at the point that defendant was placed in handcuffs, he was in "full custody" and that that arrest was lawful because the officers "detained [defendant] for his disruptive behavior in the courthouse." The subsequent search, according to the court, was lawfully incident to that arrest.

Defendant was convicted after a trial on stipulated facts. One of defendant's stipulations involved the admission of the state crime laboratory report that identified the substances found in the pill bottle as methamphetamine and heroin.

On appeal, defendant contends that the trial court erred in denying his motion to suppress. He argues that he was under arrest when handcuffed and that that arrest was unlawful because the officer who arrested him admitted that he did not have probable cause. Defendant also argues, in what he admits is an unpreserved claim of error, that the trial court plainly erred in admitting the crime laboratory report without requiring the state to produce the author of the report.

■       We begin by addressing defendant's unpreserved supplemental assignment of error, which he raised after the Supreme Court decided *State v. Birchfield*, 342 Or 624, 157 P3d 216 (2007). In that case, the court held that requiring a defendant to subpoena the criminalist who authored the crime laboratory report violates the defendant's right to confrontation under Article I, section 11, of the Oregon Constitution. *Id.* at 631-32. In this case, defendant asserts that the trial court committed plain error in admitting the report without requiring the state to produce the criminalist who authored it, and that we should exercise our discretion to address that error. Defendant relies on our decision in *State v. Marroquin*, 215 Or App 330, 168 P3d 1246 (2007), issued after *Birchfield*, in which we exercised our discretion to review an unpreserved claim of error regarding the admission of a crime laboratory report as plain error.

The state responds that, because defendant stipulated to the admission of the report, multiple competing

inferences can be drawn from the record about why defendant did not object. Thus, according to the state, defendant's unpreserved claim of error is not plain, because it does not appear on the face of the record. We agree.

■ This court has discretion to review those unpreserved claims of error that are "plain." *See* ORAP 5.45(1). To constitute "plain error," the error must (1) be an error of law, (2) be not reasonably in dispute, and (3) appear on the face of the record. *State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990). An error is not apparent on the face of the record if we must "go outside the record to identify the error or choose between competing inferences" to find it. *State v. Gornick*, 340 Or 160, 166, 130 P3d 780 (2006). Where the record gives rise to an inference that the defendant consciously chose not to object to the admission of a crime laboratory report, we have determined that there is no plain error. *State v. Motsinger*, 220 Or App 294, 295-96, 185 P3d 562, *rev den*, 345 Or 95 (2008); *State v. Raney*, 217 Or App 470, 474, 175 P3d 1024, *rev den*, 344 Or 671 (2008).

As in *Motsinger* and *Raney*, the record in this case gives rise to competing inferences about whether defendant waived his right to object to the admission of the report. Defendant stipulated to the admission of the report, and he never contested that the report accurately identified the substances found in the pill bottle. Had defendant objected, the state could have called the criminalist who authored the report to testify as to the contents of that report. Consequently, defendant may have decided not to object because he would have gained nothing by doing so. If defendant chose not to object, an inference that can be drawn from the record, then the trial court did not err in admitting the report. Accordingly, this is not the type of case in which we will review defendant's claim of error as plain error. *See Motsinger*, 220 Or App at 295-96; *Raney*, 217 Or App at 474.

We turn to defendant's contention that the trial court erred in denying his motion to suppress. He argues that the evidence should have been suppressed because the discovery of that evidence flowed from an illegal arrest. According to defendant, Griffith admitted that he did *not* have probable cause to arrest him at the time that he was placed in

handcuffs, and the trial court's determination to the contrary was erroneous.

The state acknowledges that "defendant was handcuffed by an officer who specifically disclaimed probable cause," and it does not contend that the trial court correctly analyzed the lawfulness of the search. The state nevertheless contends that the trial court's decision to deny the motion to suppress was correct, albeit for an entirely different reason, namely, that Griffith lawfully handcuffed defendant because Griffith reasonably was concerned that defendant posed a safety threat. According to the state, "[t]he handcuffing constituted a reasonable safety measure that did not require probable cause" but, instead, reasonable suspicion. Consequently, the state argues, defendant was lawfully restrained when Gates arrived at the scene. And Gates then developed probable cause to arrest defendant for disorderly conduct.

■ Article I, section 9, of the Oregon Constitution protects against warrantless searches and seizures. ORS 133.005(1) defines "arrest" to mean "to place a person under actual or constructive restraint or to take a person into custody for the purpose of charging that person with an offense." To be valid, a warrantless arrest must be supported by probable cause. ORS 133.310(1). Probable cause requires that the arresting officer subjectively believe that defendant has committed an offense, and that belief must be objectively reasonable. *State v. Miller*, 345 Or 176, 186, 191 P3d 651 (2008).

■ The Supreme Court's decision in *Miller*, issued after this case was submitted to this court, clarified what is sufficient to establish the subjective component of the probable cause inquiry. *Id.* at 188-89. In *Miller*, the arresting officer testified that he had reasonable suspicion to arrest the defendant but acknowledged that, at the time of the arrest, he had not yet developed probable cause. *Id.* at 179. According to the Supreme Court, an arresting officer's "opinion on a complex legal issue" does not determine whether the arrest was lawful. *Id.* at 187-88. Instead, the subjective belief component is established when the officer reasonably believes that his or her conduct is "legally justified" and the officer "act[s] on that belief in restraining a defendant's liberty." *Id.* at 188.

■  In this case, the trial court found, and we agree, that defendant was in "full custody" when Griffith handcuffed him. Defendant was actually restrained, both by the handcuffs behind his back and the officers holding his arms and escorting him to the holding area. Consequently, the warrantless arrest must have been supported by probable cause to be lawful.

■  Although Griffith testified that he did *not* have probable cause to arrest defendant at the time that he handcuffed him, we conclude that, under *Miller*, the subjective probable cause component was established in this case. Griffith had observed defendant behaving erratically and attempting to climb the walls near a crowd of people waiting outside the courtroom. Griffith saw that those people were trying to stay away from defendant. Griffith explained that he handcuffed defendant to get him away from the crowd because of defendant's "erratic behavior."

Given those facts, the trial court could have found that, at the time Griffith handcuffed defendant, Griffith possessed knowledge sufficient to establish probable cause to believe that defendant had committed the crime of misdemeanor disorderly conduct under ORS 166.025,[1] despite Griffith's legal conclusion to the contrary. Griffith testified that he handcuffed defendant in response to those facts, and the trial court found that the officers "detained [defendant] for his disruptive behavior in the courthouse." In other words,

------

[1] ORS 166.025 provides:

"(1) A person commits the crime of disorderly conduct in the second degree if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, the person:

"(a) Engages in fighting or in violent, tumultuous or threatening behavior;

"(b) Makes unreasonable noise;

"(c) Disturbs any lawful assembly of persons without lawful authority;

"(d) Obstructs vehicular or pedestrian traffic on a public way;

"(e) Congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse;

"(f) Initiates or circulates a report, knowing it to be false, concerning an alleged or impending fire, explosion, crime, catastrophe or other emergency; or

"(g) Creates a hazardous or physically offensive condition by any act which the person is not licensed or privileged to do.

"(2) Disorderly conduct in the second degree is a Class B misdemeanor."

Griffith believed that he was "legally justified" in restraining defendant, and he "acted on that belief" when he handcuffed defendant. *Miller*, 345 Or at 188. Accordingly, the subjective component of the probable cause inquiry was established.

The facts in this case were also sufficient to establish objective probable cause. The arrest, therefore, was lawful. Consequently, the search incident to that arrest was also lawful, and the trial court did not err in denying defendant's motion to suppress. Accordingly, we need not address the state's proposed alternative basis for affirmance.

Affirmed.