Argued and submitted June 28, reversed and remanded November 16, 2016, petition for review denied March 2, 2017 (361 Or 238)

Samantha MILLER,
*Plaintiff-Respondent,*

*v.*

COLUMBIA COUNTY,
*Defendant-Appellant,*

*and*

Phil WERNER,
*Defendant.*

Columbia County Circuit Court
102852; A158838

385 P3d 1214

Matthew J. Kalmanson argued the cause for appellant. With him on the briefs was Hart Wagner LLP.

Geordie Duckler argued the cause and filed the brief for respondent.

Before Sercombe, Presiding Judge, and DeHoog, Judge, and Edmonds, Senior Judge.

**DEHOOG, J.**

In this civil action, plaintiff sued defendant Columbia County for, among other things, false arrest and malicious prosecution.[1] Defendant appeals from a judgment awarding damages and costs entered after a jury found in plaintiff's favor on both of those claims. Defendant raises five assignments of error, the second of which contends that the trial court erred in denying defendant's directed-verdict motions as to those claims. Defendant argues that, because the officer who arrested plaintiff had probable cause for the arrest, each of plaintiff's claims failed as a matter of law. For the reasons discussed below, we agree that the trial court erred in denying defendant's motions.[2] Accordingly, we reverse and remand.

We begin with our standard of review. We review the denial of a motion for directed verdict for legal error. *Batzer Construction, Inc. v. Boyer*, 204 Or App 309, 317, 129 P3d 773, *rev den*, 341 Or 366 (2006). A defendant's motion for directed verdict must be denied if there is any evidence from which the jury could find all of the facts necessary to establish the elements of the plaintiff's cause of action. *Ballard v. City of Albany*, 221 Or App 630, 639, 191 P3d 679 (2008) ("A directed verdict * * * is appropriate only if the court can affirmatively say that there is no evidence from which a jury could find facts necessary to establish each element of the claim."). In reviewing the denial of defendant's motions for directed verdict, we consider the evidence in the light most favorable to plaintiff, the nonmoving party. *See id.* (a defendant is entitled to a directed verdict if, "on the basis of the evidence viewed in the light most favorable to plaintiff, and all reasonable inferences that may be drawn from it, [the defendant] was entitled to prevail as a matter of law").

We state the relevant facts from trial in that light. Plaintiff lived and kept a large number of dogs on a two-acre

---

[1] The trial court dismissed plaintiff's other claims against Columbia County following summary judgment proceedings, and plaintiff does not appeal those rulings. In addition, plaintiff voluntarily dismissed her claims against defendant Werner. Thus, as used in this opinion, "defendant" refers solely to Columbia County.

[2] Because our disposition of defendant's second assignment of error is dispositive, we do not address defendant's remaining assignments.

parcel in Columbia County. On November 16, 2010, plaintiff had a dispute with her neighbor, Werner, regarding plaintiff's dogs. As a result of that encounter, Werner called 9-1-1 and reported that plaintiff had pointed a gun at him and verbally threatened to kill him. Deputy Peabody, an officer with the Columbia County Sheriff's Office, responded to the call and interviewed Werner. Werner told Peabody that he had been driving his all-terrain vehicle (ATV) near plaintiff's property and stopped next to her fence. He told Peabody that he had stood on top of his ATV and demanded that plaintiff, who was in her yard, keep down the noise from her dogs. According to Werner, plaintiff ran inside, returned with a dark-colored handgun in a soft holster, removed and pointed the gun at Werner, and told Werner that she was going to shoot him.

As part of the same investigation, Peabody also spoke to Groves, another neighbor of plaintiff's. Groves told Peabody that he had been outside when the incident between plaintiff and Werner had occurred. Groves said that he had seen Werner stop his ATV near plaintiff's property and that he had heard Werner call plaintiff a derogatory name and say something about keeping her dogs quiet.

Having spoken to Werner and Groves, but not to plaintiff, Peabody sought and obtained a warrant to search plaintiff's property for the handgun and related evidence. Several days later, while driving to plaintiff's home to execute the search warrant, Peabody learned through dispatch that there had been a shooting at that residence sometime before November 16. The evidence also showed that Peabody knew at that time that there had been an ongoing dispute between plaintiff and her neighbors.

Upon arriving at plaintiff's home, Peabody handed her the search warrant, at which point plaintiff phoned her mother. Plaintiff's mother, in turn, connected plaintiff's attorney to the call, and plaintiff remained on the phone for the duration of Peabody's search. When Peabody asked plaintiff where "the gun" was located, plaintiff simply pointed to a loaded handgun on the kitchen counter. Peabody seized the gun, together with several boxes of ammunition that he found on top of plaintiff's refrigerator.

Because the handgun in plaintiff's kitchen was loaded, easily accessible, and, like the gun Werner had described, enclosed in a soft holster, Peabody concluded that it was most likely the same handgun. Peabody did not question plaintiff about the handgun or the reported incident because, based on what he had overheard of plaintiff's phone conversation, he believed that she was seeking legal advice and did not want "to go around her attorney." Based upon his witness interviews and discovery of the handgun, Peabody believed that he had probable cause to arrest plaintiff for the crimes of menacing, ORS 163.190, and pointing a firearm at another, ORS 166.190, and arrested her for both offenses.

Plaintiff was taken to jail, where she was booked and fingerprinted. Approximately five hours later, the jail released plaintiff, after first requiring her to post bail and sign a release agreement setting a court appearance in December 2010. She appeared in court as required in December but, by then, the state had decided not to pursue formal charges against her. As a result of her arrest, detention, and required court appearance, plaintiff later brought this tort action, alleging that defendant's actions had comprised false arrest and malicious prosecution.

Plaintiff's theory at trial was that, before arresting her, Peabody had a duty to investigate whether she had acted in self-defense. Plaintiff reasoned that, if she had been defending herself, she could not have been guilty of the crimes for which she was arrested. Plaintiff presented evidence that an investigation would have disclosed that, before November 16, plaintiff had had several encounters with Werner, during which Werner had threatened to kill her and had fired a rifle at her house. Plaintiff testified that she had contacted the sheriff's office following those events, but that no action was taken to protect her from Werner. As a result, plaintiff explained, she had feared for her life and purchased the handgun to protect herself.

As for the incident leading to her arrest, plaintiff testified that further investigation would have disclosed that Werner had climbed onto plaintiff's fence bearing a

semiautomatic rifle, and that plaintiff had responded by running into her house, grabbing her gun, and yelling at Werner to get off of the fence. Plaintiff argued that, had Peabody properly investigated those facts, he would have realized that she was not guilty of menacing or pointing a firearm at another. Accordingly, she argued at trial that Peabody's belief that there was probable cause to arrest her had not been reasonable and, therefore, could not justify her arrest.

Defendant, in turn, argued that Peabody had no duty to investigate further before arresting plaintiff, and that his failure to do so did not render his probable cause determination unreasonable. Thus, at the close of evidence, defendant moved for directed verdicts on both the false arrest and malicious prosecution claims. Defendant first argued that, because Peabody had probable cause for an arrest, plaintiff could not establish that her arrest had been unlawful, which, defendant noted, was an essential element of the false arrest claim. Defendant similarly argued that plaintiff's malicious prosecution claim failed as a matter of law.[3] The trial court denied defendant's motions, reasoning that the evidence gave rise to questions of fact for the jury to resolve regarding both causes of action. Specifically, the court left to the jury the question of whether the arrest was supported by probable cause, stating that the jury, not the court, should determine whether Peabody "had an obligation to ask questions of the plaintiff before arresting her." As the trial court put it, the existence of probable cause—and, particularly, whether Peabody had a duty to investigate and rule out self-defense—was "the central question in this case."[4]

---

[3] In arguing for a directed verdict on plaintiff's malicious prosecution claim, defendant focused its oral argument on the lack of any evidence that plaintiff had been subject to *any* criminal proceeding, much less one that was malicious. In its brief on appeal, however, as well as in a memorandum submitted before trial, defendant argued that the existence of probable cause to arrest defeated plaintiff's malicious prosecution claim as a matter of law.

[4] The trial court instructed the jury that one element of the malicious prosecution claim was that "defendant acted without probable cause." The court instructed the jury that an element of the false arrest claim was that "the confinement was unlawful," but, to that point, explained that, "[i]f Deputy Peabody had probable cause to arrest plaintiff, then the confinement was lawful."

As noted, defendant's second assignment of error asserts that the trial court erred in denying its motions for directed verdict, because the presence of probable cause to arrest plaintiff defeated both of her claims as a matter of law. We begin with defendant's argument that the trial court erred in denying its motion for directed verdict as to plaintiff's false arrest claim.[5]

The basic parameters of a false arrest claim are "familiar and well settled." *Hiber v. Creditors Collection Service*, 154 Or App 408, 413, 961 P2d 898, *rev den*, 327 Or 621 (1998). "The gravamen of the claim is the unlawful imposition of restraint on another's freedom of movement." *Id.* (internal quotation marks omitted). A false arrest claim consists of four elements: (1) the defendant must confine the

---

The court further instructed the jury:

"Probable cause is defined as a substantial basis for believing that more likely than not an offense has been committed and that the person to be arrested has committed it.

"Probable cause has two aspects. A police officer must subjectively believe that a crime has been committed and thus that a person or thing is subject to seizure and this belief must be objectively reasonable under the circumstances."

In its oral instructions, the trial court also included the following:

"An officer's belief is objectively reasonable based on the totality of the facts and circumstances known to the officer."

With the parties' consent, however, and after having concluded that that seemingly incomplete thought was likely to confuse the jurors rather than help them determine whether there had been probable cause, the court omitted that last point from the written instructions that it gave the jury.

The court did not provide the jury with instructions on the interplay between any ostensible duty to investigate and probable cause to arrest.

[5] As a threshold matter, plaintiff argues that any error by the trial court was either unpreserved or invited by defendant (or both) and that we should affirm on those grounds. We reject that contention. Defendant's directed-verdict motions preserved its assignments of error grounded in the failure of the evidence. *See R. J. Frank Realty, Inc. v. Heuvel*, 284 Or 301, 311, 586 P2d 1123 (1978) (a motion for directed verdict preserves a sufficiency of the evidence objection for appeal). Moreover, contrary to plaintiff's assertion, defendant did not invite error by simply requesting jury instructions regarding probable cause after the trial court had concluded that it would give that issue to the jury. Under the invited error doctrine, "a party who was actively instrumental in bringing about an alleged error cannot be heard to complain, and the case ought not to be reversed because of it." *State v. Kammeyer*, 226 Or App 210, 214, 203 P3d 274, *rev den*, 346 Or 590 (2009) (internal quotation marks omitted). By submitting a proposed jury instruction on an issue that the court had determined it would give the jury, defendant was not instrumental in bringing about the asserted error regarding the motion for directed verdict.

plaintiff; (2) the defendant must intend the act that causes confinement; (3) the plaintiff must be aware of the confinement; and (4) the confinement must be unlawful.[6] *Id.*

Of those four elements, only the last one—whether the confinement was unlawful—is at issue in this appeal. As in its directed-verdict motion, defendant argues on appeal that the existence of probable cause for plaintiff's arrest provided a complete defense to the false arrest claim, because it rendered plaintiff's arrest—and her resulting confinement— lawful. Defendant's premise is that the facts known to an officer at the time of an arrest determine whether there is probable cause for the arrest; in defendant's view, an officer has no affirmative duty to investigate potential defenses for the officer's probable cause determination to be objectively reasonable. And here, defendant observes, there was no material dispute as to what facts Peabody knew when he arrested plaintiff. Thus, defendant reasons, the question of whether plaintiff's confinement was unlawful hinged entirely on whether or not those facts constituted probable cause—an issue that defendant contends presented a legal question that the trial court was required to decide itself, not a factual question for the jury.

For her part, plaintiff appears to largely accept that what Peabody knew at the time that he arrested her was not in dispute. Instead, plaintiff focuses her challenge on defendant's contention that the existence of probable cause provides a complete defense to a false arrest claim. Plaintiff first notes that the absence of probable cause is not an element of false arrest; what a plaintiff must prove is unlawful confinement. And, according to plaintiff, in order to establish that her arrest was not unlawful, defendant had to prove both that a crime had been committed and that plaintiff's arrest was reasonable. In plaintiff's view, she did not commit a crime because she acted in self-defense, and Peabody's failure to inquire about self-defense prior to arresting her rendered her arrest unreasonable. Therefore, plaintiff argues, the trial court properly denied defendant's

---

[6] In a false arrest action, the plaintiff has the initial burden of showing that a restraint occurred, but, once that has been shown, it becomes the defendant's burden to prove that the restraint was lawful. *Ross v. City of Eugene*, 151 Or App 656, 663, 950 P2d 372 (1997).

motion for directed verdict and left to the jury the putative fact questions regarding reasonableness and Peabody's duty to inquire.

While plaintiff is correct that a lack of probable cause is not, strictly speaking, an *element* of a false arrest claim, the existence of probable cause does render an arrest lawful as a matter of law. To prevail on false arrest,

"it is fundamental that the arrest must have been a [f]alse arrest, *i.e.*, one made without legal authority. If the arrest was lawful, then it was privileged.

"Since some arrests are lawful and some are false, the existence of the privilege * * * depends on the existence of the circumstances and conditions under which the law permits an arrest."

*Napier v. Sheridan*, 24 Or App 761, 765, 547 P2d 1399 (1976) (internal quotation marks and omission omitted). And, under Oregon law, an arrest is lawful if an officer has probable cause to believe that a person has committed a felony or a misdemeanor.[7] ORS 133.310(1)(b); *see State v. Miller*, 345 Or 176, 188, 191 P3d 651 (2008) (an arrest for a misdemeanor is lawful when it is supported by probable cause). Thus, by rendering an arrest lawful, the existence of probable cause for the arrest necessarily defeats a claim of false arrest. *See LeRoy v. Witt*, 12 Or App 629, 631, 508 P2d 453 (1973).

Moreover, as defendant correctly argued in its motion, it was the trial court's duty to determine, as a matter of law, whether Peabody had probable cause to arrest plaintiff. *See Gustafson v. Payless Drug Stores*, 269 Or 354, 358, 525 P2d 118 (1974) ("[I]t is the court's function, not the jury's function, to determine the issue of probable cause."); *Napier*, 24 Or App at 768-69 (question of lawfulness of an arrest was "a question of law for the court"); *see also Miller*, 345 Or at 187 ("Whether probable cause has properly preceded an arrest * * * is not a question of fact; it is a question of law."). It is true, as plaintiff points out, that, where the facts or circumstances underlying the question of probable cause are in dispute, such issues must go to the jury. *Gustafson*, 269 Or at

---

[7] Menacing is a Class A misdemeanor. ORS 163.190(2). Pointing a firearm at another is an unclassified misdemeanor. ORS 166.190; *see State v. Erb*, 256 Or App 416, 418 n 1, 300 P3d 270 (2013) (so stating).

357 ("If the facts or inferences are in dispute the jury must decide the facts and the court must instruct the jury what facts constitute probable cause." (Internal quotation marks omitted.)); *DeHarpport v. Johnson*, 270 Or App 681, 685, 348 P3d 1192 (2015) ("If the facts are disputed, then a jury must resolve those disputed facts, and the court must instruct the jury on what facts constitute probable cause for the plaintiff's claim."); *see also Shoemaker v. Selnes et al*, 220 Or 573, 581, 349 P2d 473 (1960) (noting that "where the facts or circumstances [underlying the question of probable cause] are in dispute, such issues must go to the jury" but that "if there is no conflict in the evidence the question of probable cause is a question of law for the court"). Here, there was no factual dispute to prevent the court from determining as a matter of law whether Peabody had probable cause to arrest plaintiff.

Specifically, the parties did not dispute what Peabody *knew* about plaintiff's actions—the thrust of plaintiff's argument was that Peabody *should have known* more, *i.e.*, the facts that he would have discovered if he had conducted a more thorough investigation. And, as defendant properly acknowledged at trial, to the extent that there remained any factual dispute underlying the probable cause inquiry, the trial court was required to view those facts in the light most favorable to plaintiff. Further, to the extent that plaintiff's claim raised the question of whether Peabody had a duty to investigate further and to rule out all defenses—a question that we answer below—that, like the question of probable cause, raised a legal question that the trial court was required to answer in the course of deciding defendant's directed-verdict motion. Thus, the trial court erred in sending those legal questions to the jury. *See Roop v. Parker Northwest Paving Co.*, 194 Or App 219, 239, 94 P3d 885 (2004), *rev den*, 338 Or 374 (2005) ("Once the facts relevant to probable cause are determined, whether * * * probable cause [exists] is a question of law.").

Because we review for errors of law, we are in as good a position as the trial court to answer the legal questions presented by defendant's directed-verdict motion. As discussed above, Peabody's investigation led him to conclude that he had probable cause to arrest plaintiff for two

offenses: menacing and pointing a firearm at another. We begin with the question of whether Peabody had probable cause to arrest plaintiff for the offense of menacing.

A person commits the offense of menacing "if by word or conduct the person intentionally attempts to place another person in fear of imminent serious physical injury." ORS 163.190(1). Further, an officer has probable cause to make an arrest if: (1) the officer subjectively believes that a crime has been committed; and (2) the officer's subjective belief is objectively reasonable under the circumstances. *Miller*, 345 Or at 184 (citing *State v. Owens*, 302 Or 196, 204, 729 P2d 524 (1986)). Here, there is no dispute that Peabody subjectively believed that plaintiff had menaced Werner by physically and verbally threatening to shoot him with a handgun. Thus, the focus of our inquiry is whether Peabody's subjective belief was objectively reasonable under the circumstances.

For an officer's subjective belief to be objectively reasonable, the facts known to the officer must provide a substantial objective basis for believing it was more likely than not that a person has committed a crime. *Miller*, 345 Or at 188-89 (describing that standard); *State v. Koester*, 117 Or App 139, 142, 843 P2d 968 (1992), *rev den*, 315 Or 644 (1993) (same); *see* ORS 131.005(11) (defining probable cause). In making that determination, we consider all of the circumstances relevant to an arrest. *Miller*, 345 Or at 188.

Here, before Peabody arrested plaintiff, Werner had told him that plaintiff had brought a handgun out of her house and pointed it at him, threatening to shoot. Werner had also told Peabody that, as a result of plaintiff's conduct, he had feared for his life. Additionally, Peabody had spoken to Groves, who confirmed at least that Werner had confronted plaintiff. In addition to hearing from those witnesses, Peabody had discovered a loaded, easily accessible handgun in plaintiff's home that appeared consistent with the handgun that Werner had described. Peabody also had learned through dispatch that plaintiff had a tense relationship with her neighbors, and that there previously had been a shooting at her home. We have little difficulty concluding that those facts gave Peabody an objectively reasonable

basis to believe that, more likely than not, plaintiff had menaced Werner—that she had intentionally attempted to place Werner in fear of imminent serious bodily injury. *See* ORS 163.190(1).

Having concluded that the facts known to Peabody comprised probable cause—a conclusion that, in the abstract, plaintiff does not seem to dispute—we turn to plaintiff's argument that, in this case, Peabody's failure to conduct a further investigation rendered his subjective belief objectively unreasonable. Again, her argument is that, because further investigation would have informed Peabody that she had acted in self-defense—meaning that she had committed no crime—it was not objectively reasonable for him to believe that she had menaced Werner.

Plaintiff is mistaken. An officer is not required—through further investigation or otherwise—to "eliminate all possible lawful explanations for conduct that reasonably appears to violate the law." *State v. Bourget-Goddard*, 164 Or App 573, 578, 993 P2d 814 (1999), *rev den*, 330 Or 331 (2000); *see State v. Foster*, 350 Or 161, 173, 252 P3d 292 (2011) (in determining whether probable cause exists to search, "an observation made by police that is consistent with criminal conduct does not have to eliminate any possibility of an innocent explanation to provide probable cause"). Thus, where, as here, an officer is aware of facts that, on their face, constitute a crime, "[t]he potential existence of a defense or exemption is not relevant." *State v. Chilson*, 219 Or App 136, 141, 182 P3d 241, *rev den*, 344 Or 670 (2008) (probable cause exists when "the facts that the officer perceived establish probable cause to believe that an offense has occurred—that is, [that] the elements of an offense are present").

To be sure, plaintiff does not argue that an officer must eliminate *all* lawful possibilities before making an arrest. But here, plaintiff maintains, Peabody consciously disregarded "crucial information" and "kept himself inexcusably ignorant of reliable and timely source information" that would have established plaintiff's innocence. Under those circumstances, plaintiff contends, Peabody's failure to further investigate forecloses the conclusion that his

subjective belief that she had committed a crime was objectively reasonable.

It is true that an officer cannot simply ignore evidence that evinces a person's innocence when determining whether there is probable cause to arrest that person. As the Supreme Court explained in *Foster*, an officer may make an arrest only when,

> "an incriminating explanation [is] a probable one, when all of the pertinent facts are considered. Thus, probable cause is harder to establish based on observations or sensory perceptions that are equally or more consistent with innocent circumstances; to the extent that an innocent explanation is unlikely or a more remote possibility, probable cause is more readily established."

350 Or at 173. But it is one thing to say, as *Foster* suggests, that an officer may not ignore exculpatory facts, *see id.*; it is another thing altogether to say that an officer has a duty to search out those facts before acting on probable cause that already exists. We are not persuaded that an officer has such a duty. Moreover, because none of the incriminating facts that Peabody knew of were "equally or more consistent with innocent circumstances," *see id.*, he was permitted to act on the probable cause that he had by arresting plaintiff for menacing. Thus, to the extent that plaintiff's false arrest claim was based on her arrest for that charge, her claim failed as a matter of law.

Furthermore, our conclusion that there was probable cause to arrest plaintiff for menacing precludes her theory that defendant falsely arrested her for pointing a firearm at another. That is because, as defendant points out, an "imprisonment [can]not be 'false' if there [is] *any* 'true' reason for it." *Bacon v. City of Tigard*, 81 Or App 147, 149-50, 724 P2d 885 (1986) (emphasis in original); *see Singh v. McLaughlin*, 255 Or App 340, 348, 297 P3d 514 (2013) (noting that "false imprisonment" and "false arrest" are alternative names for the same cause of action). Because plaintiff's arrest for menacing was supported by probable cause and was, therefore, not unlawful, plaintiff's theory that Peabody had falsely arrested her for pointing a firearm at another also fails. Consequently, plaintiff's false arrest claim as a

whole fails as a matter of law, and the trial court, therefore, erred when it denied defendant's motion for directed verdict on that claim.

We next turn to defendant's argument that the trial court erred in denying its motion for directed verdict as to plaintiff's malicious prosecution claim and conclude that the trial court likewise erred in denying that motion.

Plaintiff's claim of malicious prosecution required her to establish the following elements: (1) the institution or continuation of criminal proceedings;[8] (2) by or at the insistence of the defendant; (3) termination of such proceedings in the plaintiff's favor; (4) malice in instituting the proceedings; (5) lack of probable cause for the proceedings; and (6) injury or damage as a result. *See Rose (Betty), v. Whitbeck*, 277 Or 791, 795, 562 P2d 188, *modified on denial of reh'g*, 278 Or 463, 564 P2d 671 (1977). Thus, as both parties observe, a lack of probable cause is an element of a malicious prosecution claim, such that the existence of probable cause would provide a complete defense. *Gustafson*, 269 Or at 356.

As with her claim of false arrest, plaintiff's malicious prosecution claim relies on the two offenses for which she was arrested. The menacing charge requires little discussion. Plaintiff acknowledges that probable cause to arrest her for menacing would defeat that basis for her malicious prosecution claim. And while she reprises the argument that she made regarding the false arrest claim—that Peabody's failure to investigate potential defenses to that charge precluded a finding of probable cause—we fail to see any material distinction between the application of that argument to the false arrest claim and its application here. Accordingly, for the reasons that we previously rejected that argument, we again reject it, and conclude that that aspect of plaintiff's malicious prosecution claim fails as a matter of law.

The second basis for plaintiff's malicious prosecution claim—that defendant wrongfully initiated a criminal proceeding against her for the offense of pointing a firearm

---

[8] Plaintiff's claim of malicious prosecution characterizes an arrest as a "criminal proceeding." Defendant disputes that characterization. Because we conclude that plaintiff's malicious prosecution claim fails as a matter of law for other reasons, we express no opinion on that issue.

at another—requires a slightly more extended discussion. Unlike the false arrest claim, defendant does not argue that probable cause to initiate proceedings against plaintiff for one offense would provide a defense to a claim that defendant had maliciously prosecuted her for a different offense. Accordingly, we address whether Peabody had probable cause to believe that plaintiff had committed the offense of pointing a firearm at another. As with the menacing charge, plaintiff does not dispute that Peabody subjectively believed that she had committed the offense of pointing a firearm at another, so again our analysis focuses on whether Peabody's belief was objectively reasonable.

A person commits the offense of pointing a firearm at another if that person is over the age of 12 and "with or without malice, purposely points or aims any loaded or empty pistol, gun, revolver or other firearm, at or toward any other person within range of the firearm, except in self-defense[.]" ORS 166.190. Plaintiff notes that the statutory definition of pointing a firearm at another, unlike the offense of menacing, contains an explicit exception for self-defense. *Compare id.* (pointing a firearm at another), *with* ORS 163.190 (menacing). Thus, plaintiff suggests that, even if Peabody had no duty to investigate whether she acted in self-defense before initiating a menacing charge, the definition of pointing a firearm at another creates such a duty. In other words, plaintiff's position is that, unless Peabody eliminated the possibility that plaintiff had acted in self-defense, it would not be objectively reasonable for him to conclude that there was probable cause regarding an essential element of the crime, namely, that plaintiff had not acted in self-defense.

We conclude, however, that plaintiff's comparison of the statutory definition of menacing with that of pointing a firearm at another raises a distinction without a difference. The reference to self-defense in ORS 166.190 does not convert that defense—or the absence of circumstances giving rise to that defense—into a substantive element of pointing a firearm at another.

In *State v. George*, 72 Or App 135, 137-38, 694 P2d 1011 (1985), we held that, despite that explicit reference to self-defense, the state was not required to allege in the

charging instrument that the defendant's conduct of pointing a firearm at another was unjustified. In reaching that conclusion, we explained that, before the adoption of the 1971 Criminal Code, the reference to self-defense in ORS 166.190 might have had implications for the parties' respective burdens of proof regarding that defense. *Id.* That reference did not, however, "require the state to plead a negation of" the defense; the state was required only to plead "the acts constituting the charge," *id.* at 138—in other words, the substantive elements of the charge. It follows, then, that the lack of justification for plaintiff's conduct in pointing her handgun at Werner was not an element of the offense for which she was arrested.

Here, as with the menacing charge, Peabody had probable cause to suspect plaintiff of the firearm offense. Indeed, the facts supporting that belief are a subset of the facts that we have already concluded established probable cause to arrest plaintiff for menacing. And unlike the menacing charge, it was not necessary for Peabody to believe that plaintiff had intended to place Werner in fear, but merely that she had pointed a firearm at him.[9] We conclude—and plaintiff does not dispute—that the facts known to Peabody gave him an objectively reasonable basis to believe that she had done so. Furthermore, as with the menacing charge, neither the facts supporting that belief, nor the other facts of which Peabody was shown to be aware, were equally or more consistent with her innocence. *See Foster*, 350 Or at 173. Accordingly, we conclude that Peabody had probable cause to arrest plaintiff for pointing a firearm at another in violation of ORS 166.190, and that, therefore, the arrest for that offense could not serve as the basis for plaintiff's malicious prosecution claim.

Because Peabody had probable cause to believe that plaintiff had committed the offenses of menacing and pointing a firearm at another, her arrest, based on either offense, could not serve as the basis for plaintiff's malicious prosecution claim. As a result, that claim, like plaintiff's false arrest claim, failed as a matter of law, and the trial court

---

[9] Plaintiff does not appear to dispute that Werner was within the range of her firearm when she emerged from her home and confronted him.

erred in denying defendant's motion for directed verdict on that basis.

In sum, we conclude that plaintiff's arrest in this case was supported by probable cause, because the facts known to the arresting officer established an objectively reasonable belief that plaintiff had committed the offenses of menacing and pointing a firearm at another. That probable cause defeated both plaintiff's false arrest and malicious prosecution claims as a matter of law. The trial court erred in denying defendant's directed-verdict motions by declining to answer those legal questions and, instead, treating them as fact questions for the jury.

Reversed and remanded.