Argued and submitted August 15, 2013, reversed and remanded on appeal and cross-appeal July 9, 2014

Kristina JONES,
*Plaintiff-Respondent*
*Cross-Appellant,*

*v.*

Adrian Alvarez NAVA,
*Defendant,*

*and*

WORKMEN'S AUTO INSURANCE COMPANY,
a California corporation,
*Defendant-Appellant*
*Cross-Respondent.*

Marion County Circuit Court
10C15934; A150260

331 P3d 1067

Andrew D. Glascock argued the cause for appellant-cross-respondent. With him on the briefs was Hiefield Foster & Glascock, LLP.

J. Michael Alexander argued the cause for respondent-cross-appellant. With him on the briefs were Travis S. Prestwich and Swanson, Lathen, Alexander, McCann & Prestwich, P.C.

Before Duncan, Presiding Judge, and Wollheim, Judge, and Schuman, Senior Judge.

SCHUMAN, S. J.

## SCHUMAN, S. J.

This is a personal injury case involving a claim by plaintiff against her insurer, defendant, after plaintiff was injured in an automobile accident by an uninsured motorist. After the jury returned a verdict in favor of plaintiff for $5,856.49 in damages, the court awarded plaintiff $25,182 in attorney fees. Defendant challenges plaintiff's entitlement to attorney fees and, in the alternative, the amount awarded. Plaintiff cross-appeals, arguing that the court erred in excluding certain evidence and that the court's error was prejudicial to her claim for damages. We conclude that the court's evidentiary ruling was erroneous and prejudicial, so we reverse and remand on plaintiff's cross-appeal. On defendant's appeal, we conclude that plaintiff was entitled to attorney fees, but we remand on the question of the amount of those fees.

The facts are undisputed. While driving on I-84 with her husband and children, defendant's car was hit from behind by a negligent, intoxicated, and uninsured motorist. As a result, plaintiff suffered a broken nose and other physical injuries, as well as pain, suffering, and emotional distress. Shortly thereafter, plaintiff submitted to defendant an "application for [uninsured motorist] benefits and proof of loss." Eight months then elapsed before defendant made its first attempt to settle the claim, offering $3,000.[1] ORS 742.061. Subsequently, and before plaintiff filed this action, defendant raised the offer to $6,000. Plaintiff, whose original demand was for $25,000 in uninsured motorist benefits (her policy limits), rejected the offer after her attorney conferred with his partners and two independent defense attorneys, and, based on their advice, estimated that the case was worth considerably more than the amount offered.

Court-annexed arbitration ensued. The arbitrator awarded plaintiff $11,826.99 in damages and $9,259 in attorney fees. Defendant, however, appealed the arbitration

---

[1] The eight-month lapse is significant because, as discussed below, under relevant statutes as currently interpreted by case law, by failing to tender an offer to plaintiff within *six* months of plaintiff's filing of proof of loss, defendant failed to meet one of the prerequisites for avoiding mandatory attorney fees. *See* 264 Or App at 240.

award to the circuit court. At trial, the court did not allow plaintiff to submit evidence that, following the accident, she had continuing nightmares about it and fear of driving in the dark. The court reasoned that, because plaintiff's damages were limited by the insurance policy, her action sounded in contract and were, in turn, limited by statute to damages that "arise out of bodily injury." That phrase, the court held, ruled out compensation for plaintiff's fear and nightmares. Ultimately, the jury returned a verdict awarding plaintiff $856.49 in economic damages and $5,000 in noneconomic damages, for a total that was lower than the amount of defendant's final settlement offer. Plaintiff subsequently submitted a statement seeking attorney fees of $25,182, based on a rate of $300 per hour, which was 20 percent higher than her attorney's usual hourly rate because he took the case on a contingency basis. Over defendant's objection, the court entered an award for the full amount requested.

On appeal, defendant challenges plaintiff's entitlement to attorney fees and, in the alternative, the amount awarded. In a cross-appeal, plaintiff challenges the court's ruling that excluded evidence of continuing emotional distress and fear. We begin with plaintiff's cross-appeal.

At a pretrial hearing, defendant made a motion *in limine* seeking to preclude plaintiff from offering evidence of damages for emotional distress unless such damages resulted from bodily injury. The court granted the motion, and, at trial, allowed plaintiff to testify about her state of mind in the immediate aftermath of the accident, but excluded evidence of plaintiff's long-term nightmares about the incident and her continuing fear of driving in the dark—nightmares and fears that had not abated at the time of trial. The court apparently agreed with defendant's argument that the policy and statutory language limiting emotional distress damages precluded consideration of emotional distress beyond the immediate aftermath of the physical impact. Plaintiff argued, and argues again in her cross-appeal, that evidence of the continuing emotional distress should have been admitted because it was directly related to the physical, bodily injury that she experienced from the accident itself. She notes that the insurance contract,

as well as statutes to which the contract must conform, ORS 742.504, covered plaintiff for general damages resulting from bodily injury, and that her fears and nightmares clearly fell within that category. Defendant, not offering any response to that argument, appears to concede the error. We agree. Both ORS 742.504(1)(a) and defendant's policy allow recovery for "general *** damages *** because of bodily injury" caused by the accident. Subsequent emotional harm resulting from the accident occurs "because of" that accident. *See, e.g., Porter v. Headings*, 270 Or 281, 283-84, 527 P2d 403 (1974) (court erred in excluding the plaintiff's evidence that automobile accident caused subsequent fear that plaintiff's unborn child was injured); *Fehely v. Senders*, 170 Or 457, 461, 464, 135 P2d 283 (1943) (providing that emotional injuries following physical injury include "mental suffering *** whether permanent or temporary").

Defendant, however, contends that the erroneous exclusion of the evidence does not constitute reversible error because it was not prejudicial. Or Const, Art VII (Amended), § 3 (judgment of trial court must be affirmed if error is harmless); ORS 19.415(2) ("No judgment shall be reversed or modified except for error substantially affecting the rights of a party."); OEC 103(1) (evidentiary error not presumed to be prejudicial). According to defendant, excluding evidence of lingering post-accident emotional distress was harmless because plaintiff was allowed to testify at some length about her emotional state at the time of the accident. The excluded testimony, in other words, would have been merely cumulative. We disagree. We will reverse based on evidentiary error if the excluded evidence had some likelihood of affecting the jury's verdict. *Gritzbaugh Main Street Prop. v. Greyhound Lines*, 205 Or App 640, 654, 135 P3d 345, *adh'd to on recons*, 207 Or App 628, 142 P3d 514 (2006), *rev den*, 342 Or 299 (2007). That is the situation here. There is a significant difference between a contained, short period of emotional distress immediately following physical injury and persistent, lingering, and long-term emotional distress. The court erred in excluding plaintiff's testimony, and we cannot say that the error was harmless.

That being the case, we must reverse and remand. However, on remand, the question of attorney fees may arise.

We therefore address defendant's arguments on that question. Defendant first contends that the court erred in awarding attorney fees to plaintiff under ORS 742.061. That statute provides:

> "(1) Except as otherwise provided in subsections (2) and (3) of this section, if settlement is not made within six months from the date proof of loss is filed with an insurer and an action is brought in any court of this state upon any policy of insurance of any kind or nature, and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action, a reasonable amount to be fixed by the court as attorney fees shall be taxed as part of the costs of the action and any appeal thereon.

> "* * * * *

> "(3) Subsection (1) of this section does not apply to actions to recover uninsured or underinsured motorist benefits if, in writing, not later than six months from the date proof of loss is filed with the insurer:

> "(a) The insurer has accepted coverage and the only issues are the liability of the uninsured or underinsured motorist and the damages due the insured; and

> "(b) The insurer has consented to submit the case to binding arbitration."

The "tender" referred to in subsection (1) must be timely, that is, it must be made within six months after filing the proof of loss. *Accord Wilson v. Tri-Met*, 234 Or App 615, 622, 228 P3d 1225, *rev den*, 348 Or 669 (2010); *Petersen v. Farmers Ins. Co.*, 162 Or App 462, 465, 986 P2d 659 (1999). Thus, under subsection (1), a defendant insurer will have to pay attorney fees if a claim is not settled within six months from the date of proof of loss and the plaintiff claimant recovers more than "the amount of any tender made by" the insurer within six months from the date of proof of loss, *unless* the insurer has reached the "safe harbor" of subsection (3), that is, has accepted coverage *and* consented to binding arbitration. ORS 742.061(1), (3). In this case, it is undisputed that the claim was not settled within six months from the date that plaintiff submitted proof of loss; that, within that same time period, defendant did not make any tender (or, phrased alternatively, made a tender of zero dollars), thus exposing

itself to liability for attorney fees if plaintiff recovered any amount; and defendant did not reach the safe harbor of subsection (3) because it did not consent to binding arbitration. Taking these facts and ORS 742.061 into account, the trial court concluded that plaintiff was entitled to attorney fees.

Defendant, however, argues that its tender of $6,000, even though it was not made within six months of proof of loss, nonetheless defeated plaintiff's claim for attorney fees because that amount exceeded plaintiff's recovery ($5,856.49). In other words, defendant argues that it *did* make a timely tender that exceeded plaintiff's recovery. To reach that conclusion, defendant maintains that, contrary to *Petersen* and *Wilson*, the tender does *not* have to occur within six months of the proof of loss. Those cases, defendant argues, are distinguishable, because they did not deal with a tender made before the action at issue was filed. According to defendant, applying the rule of *Petersen* and *Wilson* (tender must be made within six months of proof of loss) in a case like this would defeat the underlying policy objective of ORS 742.061, as expressed in *Dockins v. State Farm Ins. Co.*, 329 Or 20, 985 P2d 796 (1999), which, in turn, relied on *Dolan v. Continental Casualty Co.*, 133 Or 252, 255, 289 P 1057 (1930). That policy objective is to "discourage expensive and lengthy litigation."

We are not persuaded. Defendant's argument depends, first, on the dubious assertion that the statute's underlying policy purpose could be discerned, not from legislative history or text, but from a Supreme Court case decided early in the last century. It also depends on the proposition that *Petersen* and *Wilson* should be limited to situations in which that policy would be furthered, despite the fact that neither *Peterson* nor *Wilson* contains any limiting language. Finally, it depends on the proposition that applying the rule of *Petersen* and *Wilson* to the facts of this case, where the six-month time limit began before filing, would in fact undermine the policy objective. We are not persuaded that any of those assumptions is correct. Certainly, not all three are, particularly in light of what the trial court characterized, correctly, as "clear" contrary case law and statutory text. Plaintiff qualified for attorney fees under ORS 742.061.

Defendant's alternative argument is that the court erred with respect to the amount of fees awarded. That argument has two parts: First, defendant argues that the amount should have been zero dollars; second, it argues that defendant's hourly rate of $300 per hour was not reasonable. We review these issues for abuse of discretion. ORS 20.075(3).

In explaining its attorney fee decision, the court wrote in a letter opinion:

"I am not convinced that the court is required to consider the factors listed in ORS 20.075 when the condition precedents under ORS 742.061 are satisfied. Nevertheless, I have considered the factors identified in ORS 20.075(1) and I find that attorney fees in the amount of $25,182.00 are reasonable. It is of particular note that the insurer did not adjust its post-arbitration settlement posture in light of the award of attorney fees and costs but instead chose to make their $6,000 offer *** their full and final offer ***. The hourly rate of $300.00 is reasonable considering the contingency nature of the case."

We note initially that, the trial court's doubts to the contrary notwithstanding, the court *is* required to consider the ORS 20.075 factors even when a plaintiff has demonstrated entitlement to attorney fees under ORS 742.061. ORS 20.075 provides,

"(1) A court shall consider the following factors in determining whether to award attorney fees in any case in which an award of attorney fees is authorized by statute and in which the court has discretion to decide whether to award attorney fees:

"(a) The conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith or illegal.

"(b) The objective reasonableness of the claims and defenses asserted by the parties.

"(c) The extent to which an award of an attorney fee in the case would deter others from asserting good faith claims or defenses in similar cases.

"(d) The extent to which an award of an attorney fee in the case would deter others from asserting meritless claims and defenses.

"(e)  The objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings.

"(f)  The objective reasonableness of the parties and the diligence of the parties in pursuing settlement of the dispute.

"(g)  The amount that the court has awarded as a prevailing party fee under ORS 20.190.

"(h)  Such other factors as the court may consider appropriate under the circumstances of the case.

"(2)  A court shall consider the factors specified in subsection (1) of this section in determining the amount of an award of attorney fees in any case in which an award of attorney fees is authorized or required by statute. In addition, the court shall consider the following factors in determining the amount of an award of attorney fees in those cases:

"(a)  The time and labor required in the proceeding, the novelty and difficulty of the questions involved in the proceeding and the skill needed to properly perform the legal services.

"(b)  The likelihood, if apparent to the client, that the acceptance of the particular employment by the attorney would preclude the attorney from taking other cases.

"(c)  The fee customarily charged in the locality for similar legal services.

"(d)  The amount involved in the controversy and the results obtained.

"(e)  The time limitations imposed by the client or the circumstances of the case.

"(f)  The nature and length of the attorney's professional relationship with the client.

"(g)  The experience, reputation and ability of the attorney performing the services.

"(h)  Whether the fee of the attorney is fixed or contingent.

"(3)  In any appeal from the award or denial of an attorney fee subject to this section, the court reviewing the award

may not modify the decision of the court in making or denying an award, or the decision of the court as to the amount of the award, except upon a finding of an abuse of discretion.

"(4)  Nothing in this section authorizes the award of an attorney fee in excess of a reasonable attorney fee."

It is therefore true that a court does *not* have discretion to decide *whether* to award attorney fees under ORS 742.061; that statute provides that, if the prerequisites are met, "a reasonable amount to be fixed by the court as attorney fees *shall* be taxed as part of the costs of the action and any appeal thereon." (Emphasis added.) Thus, the ORS 20.075(1) factors do not need to be considered in deciding *whether* to award attorney fees. However, subsection (2) applies to the court's decision regarding the *"amount* of an award of attorney fees in any case in which an award of attorney fees is authorized *or required* by statute." (Emphases added.) In such cases—including this one under ORS 742.061, which *requires* an award of fees—the court *"shall* consider the factors specified in subsection (1) of this section. \* \* \* In addition, the court *shall* consider the following factors in determining the amount of an award of attorney fees in those cases." (Emphases added.) Additional factors follow.

Thus, in determining the amount of attorney fees to be awarded, the court was obligated to consider the relevant factors in both subsection (1) and (2) of ORS 20.075.[2] Further, in doing so, the court could in effect negate the command of ORS 742.061(1) ("a reasonable amount to be fixed by the court as attorney fees shall be taxed") by determining that a reasonable amount is zero dollars. *See State v. Starr*, 210 Or App 409, 414, 150 P3d 1072 (2007) ("The trial court entered an order, granting attorney fees and costs in the amount of zero dollars[.]"); *accord State v. Nyhuis*, 251 Or App 768, 772, 284 P3d 1229 (2012) (generally rejecting argument that "nothing" is not "an amount").

---

[2] In *Petersen,* 162 Or App at 466, this court held that the ORS 20.075(1) factors did not apply to cases in which the trial court was required to award fees. In its next session, the legislature amended ORS 20.075 so as to compel courts to consider the factors in ORS 20.075(1) and (2) when "an award of attorney fees is authorized *or required* by statute." Or Laws 2001, ch 417, § 3 (emphasis added).

Both parties in this case cite and rely heavily on *Erwin v. Tetreault*, 155 Or App 205, 214, 964 P2d 277 (1998), *rev den*, 328 Or 330 (1999), in which this court stated that "the critical consideration" is "'objective reasonableness.'" Defendant, emphasizing that its offer of $6,000 could not possibly be unreasonable when the jury ultimately awarded plaintiff less than that amount, quotes *Erwin*: "[A] defendant, who makes an objectively reasonable settlement offer, should not be required to fully fund a plaintiff's unreasonable rejection of that offer and consequent expenditure of fees to secure an incremental gain." *Id.* Plaintiff, in response, points out that *Erwin* also states, "Objective reasonableness must be assessed in light of the parties' circumstances and knowledge at the time settlement was tendered and rejected and not by some *post hoc* reference to the result actually obtained." *Id.* Plaintiff then argues that defendant unreasonably refused to raise its $6,000 offer even immediately before trial, at which time it knew that plaintiff's counsel had received estimates that the case was worth between $10,000 and $50,000 and the arbitrator had awarded plaintiff $11,826.99 in damages. Defendant replies that the appropriate time to gauge reasonableness is, as *Erwin* states, "at the time settlement was tendered and rejected," that is, almost a year before the arbitration.

To the extent that the parties propose categorical answers to the question of when parties' conduct should be deemed objectively reasonable, we disagree with both; we conclude, instead, that each case must be decided on its own facts. For example, we can envision situations in which a party's refusal to negotiate could be objectively unreasonable even after a case has been submitted to a jury. Similarly, we could also envision situations in which a refusal to negotiate even before a complaint is filed could be objectively unreasonable. In the present case, however, we cannot reach any decision. That is so, because the case is remanded to the trial court, which must ultimately make a decision based on the totality of the circumstances—and some of those circumstances have not yet occurred.

Reversed and remanded on appeal and cross-appeal.