Submitted February 3 on respondents' motion to dismiss filed March 30, appellant's response and motion for sanctions filed May 11, respondents' reply filed June 1, and respondents' motions for ORS 19.360 review filed May 8; motion to dismiss denied, motion for sanctions denied, motions for ORS 19.360 review denied, supplemental money judgments vacated and remanded, otherwise affirmed September 7, 2023

Nour Eddine MOUKTABIS,
*Plaintiff-Appellant,*

*v.*

CLACKAMAS COUNTY,
a political subdivision of the State of Oregon et al.,
*Defendants,*

*and*

Sandra M. FABER,
an individual,
and M. A., an individual,
*Defendants-Respondents.*

Multnomah County Circuit Court
21CV14422; A177553

536 P3d 1037

Plaintiff appeals the trial court's decision to grant anti-SLAPP motions filed by his former wife and her attorney. After he was acquitted on a contempt charge stemming from a report to police that he violated a restraining order, plaintiff sued defendants for false arrest, false imprisonment, malicious prosecution, and abuse of process. The trial court granted defendants' special motions to strike, dismissed them from the case, and awarded them attorney fees and prevailing party fees. Held: The trial court did not err by granting the anti-SLAPP motions. Defendants' statements and conduct, from which plaintiff's claims arose, constituted protected petitioning activity regarding an issue of public interest. Plaintiff failed to present substantial evidence to support a prima facie case. Although an award of attorney fees to defendants was mandatory, the Court of Appeals vacated and remanded the supplemental money judgments because the trial court failed to consider required factors when determining the amount of fees.

Motion to dismiss denied; motion for sanctions denied; motions for ORS 19.360 review denied; supplemental money judgments vacated and remanded; otherwise affirmed.

Shelley D. Russell, Judge.

Nour Eddine Mouktabis filed the briefs *pro se*.

Daniel L. Duyck and Duyck Law, LLC, filed the brief for respondent M. A.

Michael T. Stone, Brisbee & Stockton LLC, and Hood Stone Stockton filed the brief for respondent Sandra M. Faber.

Before Shorr, Presiding Judge, and Mooney, Judge, and Pagán, Judge.

PAGÁN, J.

Motion to dismiss denied; motion for sanctions denied; motions for ORS 19.360 review denied; supplemental money judgments vacated and remanded; otherwise affirmed.

## PAGÁN, J.

In this case, which concerns Oregon's anti-SLAPP statute, ORS 31.150, we address three main questions.[1] First, we consider whether reporting a perceived violation of a restraining order is an issue of public interest under ORS 31.150(2)(d). Second, we address whether plaintiff presented substantial evidence to support a *prima facie* case as required by ORS 31.150(3). Third, we determine whether the trial court correctly resolved motions for attorney fees. We conclude that, because reports to the police about whether court orders are being violated implicate public safety and effective governance, such reports are matters of public interest and plaintiff's claims arise from them. We further conclude that plaintiff failed to meet his burden of production to defeat the special motions to strike because there was probable cause to arrest plaintiff and he failed to provide admissible evidence of malice or ulterior motives. However, as explained below, we vacate and remand the supplemental money judgments awarding attorney fees, costs, and enhanced prevailing party fees.

Defendant M. A. is plaintiff's former wife, and defendant Sandra Faber was her attorney.[2] Faber represented M. A. in matters relating to plaintiff's and M. A.'s divorce and custody proceedings. After plaintiff was acquitted on a contempt charge stemming from M. A.'s report that he violated a restraining order, plaintiff filed claims against M. A., Faber, and others, for false arrest, false imprisonment, malicious prosecution, and abuse of process. M. A. and Faber each filed special motions to strike the claims against them. The trial court granted the motions and entered a limited judgment dismissing M. A. and Faber from the case. The trial court subsequently awarded defendants their attorney

---

[1] The acronym "SLAPP" stands for "strategic lawsuit against public participation." *Dept. of Human Services v. Lindsey*, 324 Or App 312, 313, n 1, 525 P3d 470 (2023). The legislature amended ORS 31.150 during the pendency of this appeal. *See* Or Laws 2023, ch 71, § 1 (effective Jan 1, 2024). Our analysis is not affected by those amendments, and we cite the current version of the statute.

[2] Pursuant to Joint CJO 23-012/23-01, effective April 1, 2023, we refer to plaintiff's former wife using her initials only. Occasionally, we refer to M. A. and Faber collectively as defendants. Although there are additional defendants in the underlying action, only M. A. and Faber appear on appeal and our use of "defendants" refers to the two of them.

fees and costs pursuant to ORS 31.152(3) and awarded them an enhanced prevailing party fee pursuant to ORS 20.190(3). Plaintiff appeals. For the reasons explained below, we affirm the limited judgment of dismissal, but we vacate the supplemental money judgments and remand for further proceedings on the amount of attorney fees, costs, and prevailing party fees.

To frame our discussion, we begin with some background regarding the anti-SLAPP statute. "ORS 31.150 provides a mechanism for a defendant to move to strike certain nonmeritorious claims predicated on speech and petitioning activity potentially entitled to constitutional protection." *Tokarski v. Wildfang*, 313 Or App 19, 21, 496 P3d 22, *rev den*, 368 Or 788 (2021). The purpose of ORS 31.150 is "to provide for the dismissal of claims against persons participating in public issues *** before the defendant is subject to substantial expenses in defending against them." *Staten v. Steel*, 222 Or App 17, 29, 191 P3d 778 (2008), *rev den*, 345 Or 618 (2009).

Oregon courts analyze such motions, which are referred to as "special motion[s] to strike," using a "two-step burden-shifting process." *Young v. Davis*, 259 Or App 497, 501, 314 P3d 350 (2013). First, "the court must determine whether the defendant has met its initial burden to show that the claim against which the motion is made arises out of one or more protected activities described in" ORS 31.150(2). *Id*. (Internal quotation marks omitted.) The subsection identifies four categories of claims subject to a special motion to strike:

"A special motion to strike may be made under this section against any claim in a civil action that arises out of:

"(a)   Any oral statement made, or written statement or other document submitted, in a legislative, executive or judicial proceeding or other proceeding authorized by law;

"(b)   Any oral statement made, or written statement or other document submitted, in connection with an issue under consideration or review by a legislative, executive or judicial body or other proceeding authorized by law;

"(c)   Any oral statement made, or written statement or other document presented, in a place open to the public or a public forum in connection with an issue of public interest; or

> "(d)  Any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

ORS 31.150(2). If the court determines that a claim falls within one of those four categories, then "the burden shifts to the plaintiff in the action to establish that there is a probability that the plaintiff will prevail on the claim by presenting substantial evidence to support a *prima facie* case." ORS 31.150(3). "[T]he plaintiff must submit sufficient evidence from which a reasonable trier of fact could find that the plaintiff met its burden of production." *Handy v. Lane County*, 360 Or 605, 622-23, 385 P3d 1016 (2016). If the plaintiff does so, then the trial court must deny the special motion to strike. "A defendant who prevails on a special motion to strike made under ORS 31.150 shall be awarded reasonable attorney fees and costs." ORS 31.152(3).

## I.  FACTS

The pertinent facts are largely procedural. In April 2021, plaintiff filed a complaint against M. A., Faber, Clackamas County, the Oregon City Police Department (OCPD), and the West Linn Police Department (WLPD).[3] Plaintiff alleged that M. A., acting "in concert with" Faber, "reported to OCPD that [p]laintiff violated a restraining order by sending her a text message." M. A. contacted Faber "for advice and after receiving that advice, she called to report the alleged violation." M. A. showed a police officer a message from plaintiff's telephone number, which stated, "Peace be with you." M. A. allegedly told the officer that plaintiff "sent the text as a greeting to have additional conversation in her opinion."

After confirming that "a valid restraining order was in effect which prohibited contact by phone or by text message with the exception being an emergency pertaining to the children," officers went to plaintiff's residence.[4] Plaintiff

---

[3]  Plaintiff filed an amended complaint in June 2021. We focus on the allegations in the amended complaint.

[4]  Under the Family Abuse Prevention Act (FAPA), victims of abuse may petition the circuit court for relief and custody of children. ORS 107.710. After a hearing, the court may enter a restraining order. ORS 107.718. Here, the FAPA restraining order prohibited plaintiff from contacting M. A., and it specified

denied sending a text message. Nevertheless, after officers arrested plaintiff and transported him to Clackamas County Jail, he spent the night in jail, and he was released the following day.

In the criminal case that was filed against him, plaintiff argued that he never sent a text message to M. A., "and that, instead, a Whatsapp greeting intended for [p]laintiff's mother was accidentally sent to [M. A.'s] Whatsapp[.]" Plaintiff was acquitted of the charge. After his acquittal, plaintiff asserted causes of action against his former wife, Faber, OCPD, and WLPD, for false arrest, false imprisonment, malicious prosecution, and abuse of process. Plaintiff asserted a cause of action against Clackamas County, OCPD, and WLPD for negligence. Regarding the claims against M. A. and Faber, plaintiff alleged that they intentionally caused him "to be arrested based on false allegations and pretext." He alleged that they "acted with malice with the primary purpose of harassing and intimidating" him. The amended complaint also alleged other incidents in which M. A. made false reports to OCPD that plaintiff had violated the restraining order.

M. A. and Faber each filed special motions to strike under ORS 31.150. Plaintiff opposed the motions. The trial court held a hearing on the motions and granted them. First, the trial court determined that plaintiff's claims against defendants arose from protected activity under ORS 31.150(2)(d). As explained by the trial court,

"While there does not appear to be any caselaw directly on point as to whether reports of violations of protective orders are protected under ORS 31.150, as a public policy matter such reports must be considered a matter of public interest and must be protected to avoid the risk of subjecting protected parties to fear of civil liability for reporting violations of the orders.

"The Court finds that [M. A.]'s reports to police regarding perceived violations of the FAPA restraining

---

prohibited kinds of contact, including contact by email, social media, or any other electronic method, and by phone or text message. It provided an exception permitting plaintiff to send a text message if there was an emergency pertaining to their children. ORS 107.718 was amended by Oregon Laws 2023, chapter 140, section 1, but our analysis does not concern the amendments.

order by [p]laintiff are matters of public interest and are subject to ORS 31.150. In addition, the Court finds that * * * Faber's conduct in advising her client is protected attorney-client conduct and absent any evidence of malice or bad intent is not actionable by [p]laintiff."

Second, the trial court determined that plaintiff failed to present substantial evidence to support a probability of success on his claims:

"The admissible and undisputed evidence offered by [p]laintiff in support of his false arrest and false imprisonment claims shows that he was arrested by the police on May 13, 2019, and that he was acquitted after a trial on the issue, not because [M. A.] made a false report of contact, but because [p]laintiff was able to successfully argue that the contact was unintentional. Plaintiff offers absolutely no admissible evidence that [p]laintiff's arrest was unlawful, an essential element of each of those claims."

The trial court arrived at similar conclusions regarding plaintiff's claims for malicious prosecution and abuse of process, stating that plaintiff "offers absolutely no evidence other than his speculation that [defendants] * * * had malicious intent * * *, that there was a lack of probable cause for the prosecution * * *, or that [d]efendants insisted on continuation of the prosecution against [p]laintiff for the May 13, 2019 incident." There was also no evidence of an ulterior purpose or a willful and improper act, which are required elements for a claim of abuse of process. As the trial court put it, "the divorce and custody proceedings between [plaintiff] and [M. A.] are exceedingly contentious, however, that fact with nothing else, is not substantial evidence to support a probability of success on the merits." Based on its order granting the anti-SLAPP motions, the trial court entered a limited judgment dismissing defendants from the case.

Defendants sought attorney fees and costs. Plaintiff filed objections. After a hearing, the trial court granted the motions. The court awarded attorney fees to M. A. in the amount of $40,600, and it awarded attorney fees to Faber in the amount of $11,525.50. The trial court also awarded defendants an enhanced prevailing party fee in the amount of $5,000 each. Plaintiff appeals.

## II.  ANALYSIS

### A.  *Defendants' Motion to Dismiss*

Preliminarily, we address defendants' motion to dismiss the appeal. They move to dismiss on the ground that plaintiff is in contempt of court, a bench warrant has been issued for his arrest, and he has absconded from the jurisdiction of the court. In December 2022, plaintiff was found to be in contempt of the judgment entered in his dissolution case with M. A. for failing to transfer a financial account to M. A., and for failing to pay spousal support, child support, and an equalizing judgment. When plaintiff failed to appear for sentencing, the court issued a bench warrant for his arrest. Defendants believe plaintiff left the country.

In seeking dismissal of this appeal, defendants rely primarily on *Pruett and Pruett*, 185 Or App 669, 60 P3d 1094, *rev den*, 335 Or 443 (2003). In *Pruett*, the appellant failed to comply with the terms of the contempt judgment and modification order that was the subject of his appeal. *Id.* at 671. Here, by contrast, plaintiff was found to be in contempt for failing to comply with the terms of a judgment that is *not* the subject of this appeal. In *State v. Broom*, 121 Or 202, 210, 253 P 1044 (1927), the Oregon Supreme Court declined to exercise its discretion to dismiss an appeal even though the defendant was a fugitive from justice in two other cases. Similarly, here, assuming for purposes of this case that we have discretion to dismiss the appeal, we decline to exercise our discretion based on the fact that plaintiff has been found to be in contempt of court in another case. We therefore deny defendants' motion to dismiss.[5]

### B.  *Defendants' Special Motions to Strike*

#### 1.  *Plaintiff's claims arise out of protected conduct.*

In his first assignment of error, plaintiff argues that the trial court erred in determining that his claims arose out of protected activity. We review a ruling on a special motion to strike for legal error. *Plotkin v. SAIF*, 280 Or App

---

[5] We deny without discussion plaintiff's motion for sanctions, which was filed concurrently with his response to defendants' motion to dismiss. We also deny as moot the two motions filed by defendants for ORS 19.360 review of trial court orders.

812, 815, 385 P3d 1167 (2016), *rev den*, 360 Or 851 (2017). "In conducting that review, we take the facts from the pleadings and from the supporting and opposing declarations and affidavits submitted to the trial court, ORS 31.150(4), and we view the facts underlying plaintiff's claim in the light most favorable to plaintiff." *Id.* "To determine whether a claim arises out of conduct described in ORS 31.150(2), we examine the conduct that is targeted by the claims in the complaint." *Dept. of Human Services v. Lindsey*, 324 Or App 312, 318, 525 P3d 470 (2023). "The inquiry turns on the nature of the claims asserted against a defendant and the alleged actions of the defendant giving rise to those claims[.]" *Id.* at 319.

Here, plaintiff alleged that his former wife contacted the police, based on advice provided by her attorney, to report a violation of a FAPA restraining order. Plaintiff alleged that the report to the police was false. In his declaration in opposition to M. A.'s special motion to strike, plaintiff claimed that "[b]y initiating the report, [M. A.] intended for me to be arrested and confined." Plaintiff also described other occasions when his former wife, according to plaintiff, made false statements to law enforcement and others.

In our view, plaintiff's claims against defendants arise from statements or conduct protected under ORS 31.150(2)(d), which protects "conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."[6] Focusing on the right of petition, the First Amendment to the United States Constitution protects the right of the people "to petition the Government for a redress of grievances."[7] "A petition conveys the special

---

[6] Plaintiff claims that defendants did not argue below that the alleged conduct was protected under ORS 31.150(2)(d). We disagree. Although the arguments during the hearing focused on whether reports to the police were made in connection with a judicial proceeding, M. A. argued in her special motion to strike that subsection (2)(d) applied. In ruling that defendants' conduct was protected, it is not clear whether the trial court relied on subsection (2)(c) or subsection (2)(d). Because the speech at issue concerned a request for assistance from the state, we focus on subsection (2)(d). The text of subsection (2)(d) was amended by Oregon Laws 2023, chapter 71, section 1, effective January 1, 2024, but our analysis does not address or concern the amendments.

[7] When construing the scope of subsection (2)(d), we consider whether the conduct is protected by the First Amendment to the United States Constitution.

concerns of its author to the government and, in its usual form, requests action by the government to address those concerns." *Borough of Duryea, Pa. v. Guarnieri*, 564 US 379, 388-89, 131 S Ct 2488, 180 L Ed 2d 408 (2011). Likewise, Article I, section 8, and Article I, section 26, of the Oregon Constitution protect a similar right.[8]

Regarding that right of petition, we assume that the legislature intended to give words of common usage their ordinary meaning, and we often consult dictionaries for guidance. *Kinzua Resources v. DEQ*, 366 Or 674, 681, 468 P3d 410 (2020). Definitions of "petition" include "an earnest request," and "a formal written request addressed to an official person or organized body." *Webster's Third New Int'l Dictionary* 1690 (unabridged ed 2002). The right of petition has been defined as "[t]he constitutional right—guaranteed by the First Amendment—of the people to make formal requests to the government, as by lobbying or writing letters to public officials." *Black's Law Dictionary* 1350-51 (8th ed 2004).

In *Tokarski*, 313 Or App at 25, we determined that "defendants' decision to use reserve funds to fund litigation was in furtherance of their right to petition." Although that right is often associated with filing litigation, it encompasses a broader swath of conduct. *See Clackamas County Oregon v. Clackamas River Water*, 280 Or App 366, 370, 382 P3d 598 (2016), *rev den*, 360 Or 752 (2017) ("[A] person who petitions the government for redress, *including by* filing litigation, generally cannot be held liable for damages for their petitioning conduct[.]" (Emphasis added.)).

Here, when M. A. made her report to the police, based on advice provided by Faber, she was requesting assistance from the state regarding a perceived violation of a FAPA restraining order. Plaintiff's claims against M. A.

---

*DeHart v. Tofte*, 326 Or App 720, 742, 533 P3d 829 (2023).

[8] Article I, section 8, provides: "No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right." Article I, section 26, provides: "No law shall be passed restraining any of the inhabitants of the State from assembling together in a peaceable manner to consult for their common good; nor from instructing their Representatives; nor from applying to the Legislature for redress of greviances (sic)."

and Faber for false arrest, false imprisonment, malicious prosecution, and abuse of process, arise out of that specific conduct. *See Deep Photonics Corp. v. LaChapelle*, 282 Or App 533, 546, 385 P3d 1126 (2016), *rev den*, 361 Or 524 (2017) ("To 'arise out of' the conduct *** the act underlying the claim itself must have been an act in furtherance of the right to petition and not just associated with it."). Thus, the "arise out of" requirement is satisfied.

But the question remains whether that conduct could be considered petitioning activity in connection with a public issue or an issue of public interest. When considering the related question of whether a statement involves a matter of public concern, the Supreme Court has focused on the statement's content, form, and context. *Neumann v. Liles*, 358 Or 706, 720, 369 P3d 1117 (2016) (*Neuman I*). In *Neumann I*, we determined that an online review of a wedding venue was a matter of public concern because it was "posted on a publicly accessible website, and the content of *** [the] review related to matters of general interest to the public, particularly those members of the public who are in the market for a wedding venue." *Id.* On remand from the Supreme Court, we concluded that the same online review qualified as a matter of public interest under the anti-SLAPP statute. *Neumann v. Liles*, 295 Or App 340, 345, 434 P3d 438 (2018), *rev den*, 365 Or 195 (2019) (*Neumann II*). Likewise, in *Mullen v. Meredith Corp.*, 271 Or App 698, 707, 353 P3d 598 (2015), we determined that a news report of a shooting was an issue of public interest. And in *Plotkin*, 280 Or App at 822, we determined that "a comment defendant allegedly made about the professional conduct of the leader of a public corporation" was a matter of public interest.

Here, focusing on the content, form, and context of the speech, we conclude that M. A.'s report to the police concerned an issue of public interest. With respect to its content, the speech was about a perceived violation of a FAPA restraining order. "[T]he essence of [FAPA] is to prevent acts of family violence through restraining orders and, if the court orders are disobeyed, to provide legal sanctions for the violations of the orders[.]" *A. M. B. v. Bachman*, 171 Or App 665, 673, 16 P.3d 1185 (2000), *rev den*, 332 Or 305

(2001) (internal quotation marks omitted). Certainly, preventing acts of family violence is a matter of public interest. Likewise, the public has an interest in whether court orders are being ignored or violated. Regarding the form and context of the speech, M. A., based on the advice of her attorney, reported the perceived FAPA violation to the police, thereby seeking the assistance of the state, and her report resulted in plaintiff's arrest and prosecution. Because M. A. sought the state's help in enforcing the terms of her restraining order, the form and context of the speech confirms that it was in connection with a public issue or an issue of public interest.[9]

Furthermore, our conclusion that plaintiff's claims against M. A. and Faber arise from protected conduct furthers a central goal of the anti-SLAPP statute, which is to encourage citizens to engage with and participate in government. As explained in a committee hearing prior to the statute's enactment, "[i]t is important that we encourage citizens—that is what this is about—this is encouraging citizens to engage in their state government. *** These Strategic Lawsuits Against Public Participation poison the mind of the average citizen and make them afraid of their own government." Tape Recording, House Judiciary Committee, Subcommittee on Civil Law, HB 2460, Mar 19, 2001, Tape 41, Side A (statement of Rep Kurt Schrader). We agree with the trial court that reports of perceived violations of FAPA restraining orders must be considered matters of public interest to avoid the risk of subjecting victims of domestic abuse to the fear of civil liability for reporting what they perceive to be violations of those orders. The trial court did not err when it determined that plaintiff's claims arose out of protected conduct.[10]

---

[9] Plaintiff argues that the police report was not a matter of public interest because it "concern[ed] only the protected party and the restrained party." But challenged speech may reasonably be understood to implicate a public issue or an issue of public interest, even if it centers on a private dispute.

[10] Oregon's anti-SLAPP statute was modeled on California's, and, as a result, when construing our anti-SLAPP statute, California cases decided after 2001 may be cited for their persuasive value. *Handy v. Lane County*, 360 Or 605, 623, n 12, 385 P3d 1016 (2016); *Page v. Parsons*, 249 Or App 445, 461, 277 P3d 609 (2012). In *Kenne v. Stennis*, 230 Cal App 4th 953, 966, 179 Cal Rptr 3d 953 (2014), the California Court of Appeal determined that "the making of allegedly false police reports *** can be protected petitioning activity under the first prong of the anti-SLAPP statute if the falsity of the report is controverted."

2. *Plaintiff fails to show a probability of prevailing on his claims.*

We turn to plaintiff's second assignment of error and consider whether plaintiff met his burden to establish a probability of prevailing on his claims against defendants by presenting substantial evidence to support a *prima facie* case. ORS 31.150(3). "[T]he statutory text indicates that the presentation of substantial evidence to support a *prima facie* case is, *in and of itself*, sufficient to establish a probability that the plaintiff will prevail; whether or not it is 'likely' that the plaintiff will prevail is irrelevant in determining whether it has met the burden of proof set forth by ORS 31.150(3)." *Young*, 259 Or App at 508 (emphasis in original). When considering whether a plaintiff has presented substantial evidence to support a *prima facie* case, we do not weigh the defendant's evidence against the plaintiff's; instead, "under the second step of the burden-shifting analysis the court may consider defendant's evidence only insofar as necessary to determine whether it defeats plaintiff's claim as a matter of law." *Id.* at 509.

Plaintiff asserted claims against defendants for false arrest, false imprisonment, malicious prosecution, and abuse of process. "The torts of false arrest and false imprisonment have the same four elements: (1) defendant must confine plaintiff; (2) defendant must intend the act that causes the confinement; (3) plaintiff must be aware of the confinement; and (4) the confinement must be unlawful." *Fossen v. Clackamas County*, 271 Or App 842, 847, 352 P3d 1288 (2015). The existence of probable cause "render[s] an arrest lawful as a matter of law." *Miller v. Columbia County*, 282 Or App 348, 355, 385 P3d 1214 (2016), *rev den*, 361 Or 238 (2017). "[A]n officer has probable cause to make an arrest if: (1) the officer subjectively believes that a crime has been committed; and (2) the officer's subjective belief is objectively reasonable under the circumstances." *Id.* at 357.

Here, plaintiff provides no evidence that his arrest and confinement were unlawful. Plaintiff relies on evidence and testimony from the contempt proceeding that was filed against him based on M. A.'s report. As plaintiff points out, he was acquitted of that charge, but that does not equate

to a showing that he was unlawfully confined. During that proceeding, plaintiff argued that he had inadvertently sent a WhatsApp message to his former wife. Relying on *State v. Nicholson*, 282 Or App 51, 62, 383 P3d 977 (2016), plaintiff argued that the state was required to prove that his alleged violation of the FAPA restraining order was willful, or, in other words, that it was intentional and performed with knowledge that the act was forbidden. By granting the motion for acquittal, it is reasonable to infer that the trial court concluded that the state failed to meet its burden of proving beyond a reasonable doubt that plaintiff's violation of the restraining order was willful or intentional.

At the same time, at the hearing on the violation of the restraining order, plaintiff's former wife testified that she received a message from plaintiff's telephone number, and an officer from OCPD testified that, when he questioned plaintiff, the officer was focused on whether that telephone number was plaintiff's, and whether plaintiff had made contact with his former wife. Plaintiff admitted to the officer that the number belonged to him, but he denied sending M. A. a text message. When shown the message that M. A. received, plaintiff was able to translate it as "Peace be upon you," or "Hello."

The evidence is thus insufficient to make a *prima facie* case that the officer lacked probable cause to arrest plaintiff, even if it later was determined in a legal proceeding that the WhatsApp message was sent unintentionally. *See Miller*, 282 Or App at 358 ("An officer is not required—through further investigation or otherwise—to eliminate all possible lawful explanations for conduct that reasonably appears to violate the law." (Internal quotation marks omitted.)). Because there was probable cause to arrest plaintiff, he cannot make a *prima facie* showing that his arrest and confinement were unlawful.[11] Accordingly, plaintiff failed to

---

[11] Plaintiff alleged that, in January 2020, M. A. reported to WLPD that plaintiff had weapons in his possession, and plaintiff alleged that police detained him and searched him for weapons, but he was not arrested or charged. We reject without further discussion plaintiff's suggestion that those allegations were sufficient to support a *prima facie* case of false arrest. *See* ORS 133.005 (a stop is not an arrest.).

present substantial evidence to support a *prima facie* case against defendants for false arrest and false imprisonment.

Turning then to Plaintiff's claim of malicious prosecution, he was required to provide evidence establishing a *prima facie* case of the following elements: "(1) the institution or continuation of criminal proceedings; (2) by or at the insistence of the defendant; (3) termination of such proceedings in the plaintiff's favor; (4) malice in instituting the proceedings; (5) lack of probable cause for the proceedings; and (6) injury or damage as a result." *Miller*, 282 Or App at 360 (footnote omitted). "[T]he existence of probable cause is a complete defense to a claim for malicious prosecution." *Hartley v. Water Resources Dept.*, 77 Or App 517, 520, 713 P2d 1060, *rev den*, 301 Or 78 (1986).

Although related to malicious prosecution, abuse of process is a distinct tort. An abuse of process can occur even when a legal procedure is commenced with probable cause. *Kelly v. McBarron*, 258 Or 149, 154, 482 P2d 187 (1971). "[T]o prevail on an abuse of process claim, a plaintiff must prove some ulterior purpose, unrelated to the process, and a willful act in the use of the process that is not proper in the regular conduct of the proceeding." *Singh v. McLaughlin*, 255 Or App 340, 355, 297 P3d 514 (2013). Showing an ulterior purpose generally requires "coercion to obtain a collateral advantage not associated with the process, such as the surrender of property or the payment of money." *Hartley*, 77 Or App at 522.

Once again, viewing the evidence in the light most favorable to plaintiff in relation to his claims for malicious prosecution and abuse of process, he did not present sufficient evidence to establish a probability that the officer lacked probable cause, or of malice or ulterior purpose. For a malicious prosecution claim, malice is "defined as any primary purpose other than to bring a person to justice." *Singh*, 255 Or App at 353 (internal quotation marks omitted). "Evidence that a defendant initiated an arrest without probable cause is, standing alone, generally sufficient to give rise to an inference of malice." *Id.* at 354.

Here, as already explained, even looking at the evidence in the light most favorable to plaintiff, there *was*

probable cause to arrest him because he made contact with his former wife by telephone, even if it was later determined in a legal proceeding not to have been intentional. In arguing that he met his burden of production regarding malice and ulterior purpose, plaintiff points to the declarations that he filed in opposition to the special motions to strike, but many of plaintiff's statements in those declarations do not concern his May 2019 arrest, most of plaintiff's statements are inadmissible, and plaintiff merely speculates regarding the intentions and purposes of his former wife and her attorney. Plaintiff relies on the history of his contentious legal disputes with his former wife, but, because there was probable cause to arrest plaintiff regarding a perceived violation of a FAPA restraining order, we cannot reasonably infer from the circumstances that his former wife and her attorney acted with malice or an ulterior purpose. *See State v. Bivins*, 191 Or App 460, 468, 83 P3d 379 (2004) (evidence is "insufficient to support an inference when the conclusion to be drawn from it requires too great an inferential leap—that is, when the logic is too strained." (Internal quotation marks omitted.)). We conclude that plaintiff failed to meet his burden of production regarding evidence of lack of probable cause, malice, or ulterior purpose. *See Page v. Parsons*, 249 Or App 445, 447, 277 P3d 609 (2012) (affirming grant of anti-SLAPP motion on a claim for abuse of process); *see also Mohabeer v. Farmers Ins. Exchange*, 318 Or App 313, 320, 508 P3d 37, *rev den*, 370 Or 212 (2022) (trial court erred in denying anti-SLAPP motion because plaintiff had "not met his burden to present *prima facie* evidence of a lack of probable cause.").

We recognize that it will often be difficult for a plaintiff to produce admissible evidence of malice or ulterior purpose, particularly during the early stages of litigation. Nevertheless, "[i]n the context of the special motion to strike, * * * the existence of *prima facie* proof of the elements of the claim being challenged by the motion is something that the court determines as a matter of law, based on the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based." *Mohabeer*, 318 Or App at 318-19 (internal quotation marks omitted). Moreover, plaintiff could have sought specific,

limited discovery to bolster his allegations of malice and ulterior purpose. *See* ORS 31.152(2) (although the filing of a special motion to strike stays discovery, "[t]he court, on motion and for good cause shown, may order that specified discovery be conducted notwithstanding the stay imposed by this subsection.") Here, having reviewed the pleadings and the evidence submitted, we conclude that the trial court did not err when it granted the special motions to strike and dismissed the claims against defendants.[12]

## C.  *Attorney Fees and Prevailing Party Fees*

In his third assignment of error, plaintiff argues that the trial court erred in its determination awarding attorney fees and prevailing party fees to defendants. Under ORS 31.152(3), an award of attorney fees and costs to a defendant who prevails on an anti-SLAPP motion is mandatory. "In determining a reasonable attorney fee award under ORS 31.152(3), the trial court must consider factors enumerated in ORS 20.075." *Robinson v. DeFazio*, 284 Or App 98, 103, 392 P3d 781, *adh'd to as modified on recons*, 286 Or App 709, 399 P3d 1095, *rev den*, 362 Or 175 (2017). We review a trial court's decision regarding the amount of attorney fees for an abuse of discretion. *Id.* Separately, based on its consideration of enumerated factors, a trial court "may award to the prevailing party up to an additional $5,000 as a prevailing party fee." ORS 20.190(3).

Plaintiff requests *de novo* review of the trial court's factual findings regarding the amount of attorney fees.

---

[12]  Faber also argues that plaintiff's claims against her are barred by the litigation privilege. Plaintiff alleged that M. A. contacted the police based on advice provided by Faber, so it is reasonable to construe Faber's statements or conduct as part of the petitioning activity protected by the anti-SLAPP statute. As a result, we need not consider the scope and applicability of the litigation privilege. *See Mantia v. Hanson*, 190 Or App 412, 417-18, 79 P3d 404 (2003) (litigation privilege provides immunity for conduct and statements made in connection with judicial proceedings, but there is an exception for "wrongful initiation" actions); *see also Reynolds v. Schrock*, 341 Or 338, 350, 142 P3d 1062 (2006) (holding that "a lawyer acting on behalf of a client and within the scope of the lawyer-client relationship is protected by such a privilege and is not liable for assisting the client in conduct that breaches the client's fiduciary duty to a third party."). In another appeal filed by plaintiff, we reversed the trial court's grant of summary judgment in favor of his former wife because there were genuine issues of material fact as to whether M. A.'s statements were made in a privileged context. *Mouktabis v. M. A.*, 315 Or App 22, 25, 500 P3d 32 (2021).

When we have discretion to exercise *de novo* review, we do so only in exceptional cases. ORAP 5.40(8)(c). We have discretion to review equitable actions *de novo*. ORS 19.415(3)(b). But here, plaintiff seeks money damages, not equitable relief, so *de novo* review is not available. *See Ben Rybke Co. v. Royal Globe Insurance Co.*, 293 Or 513, 520, 651 P2d 138 (1982) (action at law for the payment of money allegedly owed under an insurance policy was not an equitable action subject to *de novo* review). Instead, we review the trial court's decision regarding the amount of attorney fees for an abuse of discretion. *Robinson*, 284 Or App at 103. Nevertheless, "the terms on which the trial court exercised its discretion must be legally permissible." *Id.* (Internal quotation marks omitted.)

Here, in awarding attorney fees under ORS 31.152(3), the trial court stated in its orders that it did not "consider the ORS 20.075(1) factors except as to whether to award an enhanced prevailing party fee." The factors in ORS 20.075(1) concern whether to award fees, and, because an award of attorney fees to defendants was mandatory under ORS 31.152(3), the trial court concluded that it was not required to consider those factors. *See* ORS 20.075(1) ("A court shall consider the following factors in determining whether to award attorney fees in any case in which an award of attorney fees is authorized by statute *and in which the court has discretion to decide whether to award attorney fees*[.]") (Emphasis added.)[13]

Plaintiff argues that the trial court erred by failing to consider the subsection (1) factors when determining the amount of attorney fees. On that point, we agree with plaintiff because ORS 20.075(2) expressly provides that "[a] court shall consider the factors specified in subsection (1) of this section in determining the amount of an award of attorney fees *in any case in which an award of attorney fees is authorized or required by statute*." (Emphasis added.) This is a case in which attorney fees are required by statute and the trial court erred by failing to consider the subsection (1)

---

[13] ORS 20.075 was amended in 2023. *See* Or Laws 2023, ch 72, § 32. Those amendments do not affect our analysis and we refer to the current version of the statute.

factors. *See Jones v. Nava*, 264 Or App 235, 244, 331 P3d 1067 (2014) (even when an award of attorney fees is required by statute, "in determining the amount of attorney fees to be awarded, the court was obligated to consider the relevant factors in both subsection (1) and (2) of ORS 20.075.").

We cannot say that the error was harmless because the trial court's consideration of the subsection (1) factors could have had an impact on its decision regarding the amount of fees. For example, under ORS 20.075(1)(g), the trial court is required to consider the amount awarded as a prevailing party fee under ORS 20.190, suggesting that the trial court's decision to award an enhanced prevailing party fee could have had an impact on the amount of anti-SLAPP attorney fees awarded. But the trial court never engaged in considerations of that nature because it expressly did not consider the ORS 20.075(1) factors when determining the amount of reasonable attorney fees under ORS 31.152(3). We therefore vacate the supplemental money judgments and remand for the trial court to take into account both the ORS 20.075(1) factors and the ORS 20.075(2) factors when determining the amount of anti-SLAPP attorney fees to award to defendants. On remand, of course, an award of reasonable attorney fees and costs to defendants is mandatory. *See* ORS 31.152(3).

Given our decision to vacate and remand, we need not address many of plaintiff's appellate challenges to the amount of attorney fees awarded. However, because the issue will likely arise again on remand, we note that the trial court erred when it entered two separate supplemental money judgments awarding an enhanced prevailing party fee of $5,000 to both M. A. and Faber, for a total of $10,000. The statutory maximum for a prevailing party fee against plaintiff is $5,000. ORS 20.190(3). "A court may not award * * * more than one prevailing party fee against a nonprevailing party regardless of the number of parties in the action[.]" ORS 20.190(4). As a result, the trial court should not have awarded an enhanced prevailing party fee of $5,000 to each defendant. However, a trial court may split the prevailing party fee between defendants up to the statutory maximum

of $5,000. *Seida v. West Linn-Wilsonville School District 3 J T*, 169 Or App 418, 428, 9 P3d 150 (2000).

Motion to dismiss denied; motion for sanctions denied; motions for ORS 19.360 review denied; supplemental money judgments vacated and remanded; otherwise affirmed.