236 November 22, 2023 No. 608

***This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Brady PREHEIM,
*Plaintiff-Appellant,*

*v.*

Rosemary CLEMENT
and Charles Castner,
*Defendants-Respondents.*

Columbia County Circuit Court
21CV47234; A178444

Cathleen B. Callahan, Judge.

Argued and submitted September 28, 2023.

Jacob Johnstun argued the cause and filed the brief for appellant.

Matthew E. Malmsheimer argued the cause for respondents. Also on the brief were Christopher Lundberg and Haglund Kelley LLP and Robert W. Kirsher.

Before Aoyagi, Presiding Judge, and Joyce, Judge, and Jacquot, Judge.

JOYCE, J.

Affirmed.

**JOYCE, J.**

Police arrested plaintiff for harassment and fourth-degree assault after one of the defendants reported that he shoved her on a public sidewalk. The prosecutor declined to file charges. Plaintiff then brought this tort action against defendants, alleging claims for defamation, false arrest, and malicious prosecution. Defendants filed a special motion to strike under Oregon's anti-SLAPP statute, ORS 31.150,[1] arguing that defendants' report to the police fell under the protections of the anti-SLAPP statute and that plaintiff could not produce evidence that he would prevail on his tort claims. *See* ORS 31.150(3) (if a claim falls within the statute, the burden shifts to plaintiff to show that "there is a probability that the plaintiff will prevail on the claim by presenting substantial evidence to support a *prima facie* case"). The trial court agreed and dismissed plaintiff's defamation, false arrest, and malicious prosecution claims. On appeal, plaintiff raises four assignments of error. We affirm.

*Application of Oregon's anti-SLAPP statute to the making of police reports:* In his first assignment of error, plaintiff contends that the trial court erred in concluding that reports to police fall within the scope of Oregon's anti-SLAPP statute. After the parties filed their briefs in this matter, we answered that question in the affirmative. In *Mouktabis v. Clackamas County Assessor*, 327 Or App 763, 764, 536 P3d 1037 (2023), we held that reports to police about perceived legal violations fall within the ambit of Oregon's anti-SLAPP statute. In so holding, we relied on ORS 31.150(2)(d), which protects "conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." *Id.* at 771. We also observed that Oregon's statute was modeled on California's, that we rely on California cases for their persuasive value, and that California courts have held that "the making of allegedly false police reports *** can be protected petitioning activity

---

[1] "SLAPP" stands for "Strategic Lawsuit Against Public Participation." *Dept. of Human Services v. Lindsey*, 324 Or App 312, 313 n 1, 525 P3d 470 (2023). The legislature amended ORS 31.150 during the pendency of this appeal. *See* Or Laws 2023, ch 71, § 1 (effective Jan 1, 2024). Our analysis is not affected by those amendments, and we cite to the current version of the statute.

under the first prong of the anti-SLAPP statute if the falsity of the report is controverted." *Id.* at 774 n 10 (citing *Kenne v. Stennis*, 230 Cal App 4th 953, 966, 179 Cal Rptr 3d 953 (2014)).

Given that there is no dispute here that the veracity of defendants' report to police is controverted, and given our holding in *Mouktabis*, defendants' complaint to police falls within the anti-SLAPP statute.

*Dismissal of defamation claim:* In his second assignment of error, plaintiff contends that the trial court erred in dismissing his defamation claim because he presented substantial evidence to support a *prima facie* case. ORS 31.150(3). In his view, in making their reports to police, defendants made several false statements. As noted above, this dispute arose out of a confrontation on a sidewalk between one of the defendants, Clement, and plaintiff. Clement saw plaintiff walking towards her with two dogs off-leash. Clement told police that plaintiff "marched straight into" her, which caused her to stumble off balance.[2] She told police that he then used one of his arms to "shov[e]" her in the middle of her chest, which caused her to stumble back into a power pole. Clement's husband, defendant Castner, observed the shove. The police report states that Clement dropped items that she was carrying, although it is unclear whether either Clement or Castner said as much. Clement said that she suffered pain because of the shove.

Police spoke with plaintiff, who said that he tried walking around Clement but she moved into his path of travel and that he then walked into her, which "pushed her back." He disputed that Clement fell back into a power pole. Police arrested plaintiff for harassment and fourth-degree assault and booked him into the county jail.

After plaintiff's arrest, police obtained a video of the incident. The video shows Clement stepping in front of plaintiff while holding up her phone. The video shows the two involved in what the police report describes as "what

---

[2] The police report states that Clement reported that plaintiff walked "directly into her without making an attempt to walk around her." The video of Clement's statement, however, demonstrates that that summary of Clement's statement is inaccurate.

appears as a physical altercation," and plaintiff uses his arm to push Clement, causing her to stumble backwards. The video does not show Clement stumbling into a power pole; indeed, Clement later agreed that although plaintiff pushed her, she was wrong about the power pole detail. The prosecutor ultimately elected not to pursue charges against plaintiff.

Plaintiff's claim for defamation, in the context of an anti-SLAPP motion, requires that he establish a *prima facie* case for defamation. That, in turn, requires proof that defendants' statements were false. *Tubra v. Cooke*, 233 Or App 339, 347, 225 P3d 862, *rev den*, 348 Or 621 (2010), *cert den*, 562 US 1256 (2011). And, because the parties agree that plaintiff is a public figure and faces a higher burden to establish his claim, plaintiff must also establish proof that defendants acted with actual malice. *Wingard v. Oregon Family Council, Inc.*, 290 Or App 518, 523, 417 P3d 545, *rev den*, 363 Or 119 (2018).

An inaccurate fact does not by itself amount to malice; rather, malice may be established by evidence that a statement was published "with knowledge that it was false or with reckless disregard of whether it was false or not," *New York Times Co. v. Sullivan*, 376 US 254, 279-80, 84 S Ct 710, 11 L Ed 2d 686 (1964); "with [a] high degree of awareness of [its] probable falsity," *Garrison v. Louisiana*, 379 US 64, 74, 85 S Ct 209, 13 L Ed 2d 125 (1964); or when the defendant "entertained serious doubts as to the truth of [its] publication," *St. Amant v. Thompson*, 390 US 727, 731, 88 S Ct 1323, 20 L Ed 2d 262 (1968). Furthermore, the evidence must show that the defendant knew that the statement was false or acted with reckless disregard as to its falsity *at the time that the defendant made their statement. Wingard*, 290 Or App at 524.

Additionally, Oregon recognizes a conditional privilege for reports made to law enforcement, thereby requiring proof that defendants abused the privilege. That, in turn, can be shown by proof that defendants: (1) knew that their statements were false or lacked reasonable grounds for believing them to be true; (2) made the statements for a purpose other than that for which the privilege exists;

(3) made the statements to a "person not reasonably believed to be necessary to accomplish the purpose" of the privilege; or (4) included in the statement defamatory remarks "not reasonably believed to be necessary to accomplish the purpose" for which the statement is privileged. *Lund v. Arbonne International, Inc.*, 132 Or App 87, 96, 887 P2d 817 (1994).

Plaintiff failed to meet his burden to establish a *prima facie* case. Plaintiff points to four statements that he believes to be defamatory, including that plaintiff "walked straight into" Clement, that he "bumped into" her, that he "caused her to drop her phone because of the pain he caused her," and that he shoved Clement "into a power pole." A review of the police interview reflects that Clement told the police that she did *not* drop her phone. Thus, we do not address that statement further. Of the remaining three statements, only the statement about the "power pole" was false.[3] Yet plaintiff failed to present evidence that defendants, at the time they made the statement to the police, either knew it was false, had a high degree of awareness that it was false, or entertained serious doubts as to its truth that it was false. The fact that Clement reported that she had been pushed into the power pole and later admitted she was mistaken about that fact does not by itself show that, at the time she made the statement, she did not believe it was true or lacked reasonable grounds to believe it was true. *McNabb v. Oregonian Publishing Co.*, 69 Or App 136, 140, 685 P2d 458, *rev den*, 297 Or 824 (1984), *cert den*, 469 US 1216 (1985) (malice cannot be inferred from the fact of a false statement alone or from the mere fact that the accusations are of a serious nature).

To be sure, we have previously recognized that "it will often be difficult for a plaintiff to produce admissible evidence of malice or ulterior purpose, particularly during the early stages of litigation." *Mouktabis*, 327 Or App at 778. That said, "'[i]n the context of the special motion to strike,

---

[3] The video of the incident in fact shows plaintiff walking into and bumping Clement. To be sure, the video also shows that Clement positioned herself in front of plaintiff (arguably, repeatedly), and that as a result, plaintiff bumping into her was not entirely plaintiff's own doing. Although Clement omitted some of the lead-up to the physical contact, plaintiff has not argued that those omissions— rather than Clement's statements—are defamatory, nor has he demonstrated that those omissions could or would rise to the level of actual malice.

\* \* \* the existence of *prima facie* proof of the elements of the claim being challenged by the motion is something that the court determines as a matter of law, based on the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based.'" *Id.* (internal citation omitted). Moreover, plaintiff could have, but did not, seek "specific, limited discovery to bolster his allegations of malice[.]" *Id.* at 778-79; *see also* ORS 31.152(2) (allowing for specified discovery).

Because plaintiff has not met his burden to establish a *prima facie* case for defamation, the trial court correctly granted defendants' motion.

*Dismissal of malicious prosecution and false arrest claims:* In his third and fourth assignments of error, plaintiff argues that the trial court erred in granting defendants' anti-SLAPP motion on the malicious prosecution and false arrest claims. In opposing defendants' anti-SLAPP motion, plaintiff addressed defendants' arguments as to why the court should not dismiss the defamation claim; plaintiff did not, in contrast, put forth any argument as to why the malicious prosecution and false arrest claims should not be dismissed. The third and fourth claims of error are therefore not preserved and not properly before us. *See Schultz v. Franke*, 273 Or App 584, 587-88, 359 P3d 487, *rev den*, 358 Or 527 (2015) (where party failed to "do anything to oppose defendant's motion to dismiss" a claim, the claim of error is unpreserved); *Hoffer v. State of Oregon*, 136 Or App 375, 378-79, 902 P2d 127 (1995), *rev den*, 322 Or 489 (1996) ("By failing to respond to the motion for summary judgment, petitioner failed to preserve for appellate review any argument or issue concerning the validity of his agreement to waive his right to seek post-conviction relief.").

Affirmed.